SCHWEITZER v BOARD OF FORENSIC POLYGRAPH
EXAMINERS

FEIST v BOARD OF FORENSIC POLYGRAPH EXAMINERS

1. MANDAMUS—DISCRETIONARY WRIT—PUBLIC OFFICIALS—CLEAR LE-
   GAL DUTY—MINISTERIAL ACTS—DISCRETION.

   Mandamus is a discretionary writ and will issue against a public
   official only to compel the enforcement of a clear legal duty;
   ordinarily the act requested must be of a ministerial nature;
   however, if the act requires some discretion but is mandated by
   statute and the officer failed to carry out the provision of the
   statute, the courts may order him to do so.

2. MANDAMUS—COURTS—COURT OF APPEALS—CIRCUIT COURTS—LI-
   CENSES—STATE OFFICIALS—BOARD OF POLYGRAPH EXAMINERS.

   Mandamus in the Court of Appeals is the proper method to test
   the denial of licenses to applicants by the Michigan State Board
   of Forensic Polygraph Examiners where the action was com-
   menced prior to the time that the circuit courts had authority
   to hear a mandamus action against state officials.

3. LICENSES—POLYGRAPH EXAMINERS LICENSE—STATUTES—GRANDFA-
   THER CLAUSE.

   An applicant for a polygraph examiners license did not qualify
   under the grandfather clause of the Forensic Polygraph Exam-
   iners Act where (1) his prior practice had been limited to a
   device capable of measuring only galvanic skin response, only

REFERENCES FOR POINTS IN HEADNOTES
[1] 52 Am Jur 2d, Mandamus §§ 76, 80–82.
[2] 51 Am Jur 2d, Licenses and Permits § 81.
   52 Am Jur 2d, Mandamus §§ 36, 207–209.
[3] 51 Am Jur 2d, Licenses and Permits § 36.
   Construction of "grandfather clause" of statute or ordinance regu-
   lating or licensing business or occupation. 4 ALR2d 667.
   Validity and construction of statutes licensing or otherwise regulat-
   ing operators of polygraph or similar devices. 32 ALR3d 1324.
[4] 73 Am Jur 2d, Statutes § 142 et seq.
[5] 73 Am Jur 2d, Statutes § 360.
[6] 73 Am Jur 2d, Statutes §§ 274–276.

one of the three components of the modern polygraph, and (2) he had not completed his internship program prior to the effective date of the statute; therefore, the State Board of Forensic Polygraph Examiners properly refused to grant a license (MCLA 338.1701 *et seq.;* MSA 18.186[1] *et seq.).*

4. STATUTES—STATUTORY CONSTRUCTION—GENERALLY ACCEPTED MEANING—CONTEXT.

Words in a statute are to be given a common construction according to the generally accepted meaning unless it appears from the context or otherwise in the statute that a different sense was intended.

5. STATUTES—EFFECTIVE DATE—WORDS AND PHRASES.

The phrase "effective date" as it is used in discussing legislative action means the date upon which an act becomes law and is enforceable.

6. LICENSES—POLYGRAPH EXAMINERS LICENSE—SUBSTANTIAL COMPLIANCE—INVESTIGATIVE EXPERIENCE—STATUTES.

An applicant for a polygraph examiners license was improperly denied a license by the State Board of Forensic Polygraph Examiners where (1) the denial was based on the board's decision that the applicant had failed to comply with certain statutory requirements which reflected too narrow an interpretation of the language in the statute calling for the applicant to substantially fulfill those requirements, and (2) the applicant had substantially fulfilled the statutory requirements relating to investigative experience (MCLA 338.1710[d][ii]; MSA 18.186[10][d][ii]).

Original action in the Court of Appeals. Submitted June 10, 1977, at Lansing. (Docket Nos. 25879, 25880.) Decided September 6, 1977. Leave to appeal applied for.

Complaints in the Court of Appeals by Samuel Schweitzer and Robert H. Feist against the Michigan State Board of Forensic Polygraph Examiners for mandamus to compel the defendant to issue polygraph examiners licenses to the plaintiffs. Mandamus denied as to plaintiff Schweitzer and granted as to plaintiff Feist.

*Robert M. Justin,* for plaintiffs.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *A. Michael Leffler,* Assistant Attorney General, for defendant.

Before: R. J. DANHOF, C. J., and T. M. BURNS and A. E. KEYES,* JJ.

T. M. BURNS, J. These cases involve original complaints for mandamus, GCR 1963, 714, to compel the Michigan State Board of Forensic Polygraph Examiners to issue plaintiffs Schweitzer and Feist polygraph examiners licenses under the grandfather clause contained in § 9 of the Forensic Polygraph Examiners Act, 1972 PA 295; MCLA 338.1701 *et seq.;* MSA 18.186(1) *et seq.* Both plaintiffs applied for licenses under § 9 of the act, MCLA 338.1709; MSA 18.186(9), and eventually the board denied both applications.

Plaintiffs' applications were timely filed under § 9.[1] Neither applicant received immediate action on his application. The board in each case corresponded through form letters indicating that action on the application was being "deferred". Plaintiffs continued to correspond with the board until July of 1975.[2]

After submitting to a personal interview on July 9, 1975, plaintiffs waited for a final determination on their applications. When no decision was forthcoming from the board, plaintiffs sought mandamus in this Court to compel the Board to issue

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] Section 9 of the act allows licensure without examination under certain circumstances if the application was made within one year of the effective date of the act. 1972 PA 295 became effective March 30, 1973. Schweitzer's application was filed March 25, 1974. Feist's application was filed February 19, 1974.

[2] On June 9, 1975, defendant notified plaintiffs and others that July 1, 1975, had been selected as the date for issuance of licenses under the act and warned of prosecution for anyone operating without a license after July 15, 1975.

final orders as required by § 23(2) of the act, MCLA 338.1723(2); MSA 18.186(23)(2). This Court ordered the board to issue final decisions on each application, retained jurisdiction and postponed decision on the merits of the claims originally raised until the board had acted. The board did issue final decisions denying each application, but this Court was forced to intervene again to compel a statement of specific reasons why the licenses were denied and also to compel issuance of temporary polygraph examiners licenses pending this decision.

I

The first issue which must be resolved is whether plaintiffs may challenge the denial of licenses by the board through mandamus in the Court of Appeals. The board contends that plaintiffs have not shown that they are entitled to mandamus relief or the absence of another adequate legal remedy.

The parties to this appeal agree that, as a general rule, mandamus will issue only to compel performance of a ministerial act to which plaintiff has a clear legal right and which defendant has a clear legal duty to perform.[3] See, *LundBerg v Corrections Commission,* 57 Mich App 327; 225 NW2d 752 (1975).[4]

---

[3] Plaintiffs' claim of a clear legal right and clear legal duty comes from § 9, "a person upon application to the board dated within 1 year after the effective date of this act, and upon payment of the required license fee, *shall be issued* an examiner's license hereunder, without examination, if he satisfies the registration requirements established by the board and satisfies the board by affidavit or otherwise that he is qualified [under (a) and (b)]". There is no factual dispute in these cases, only a legal dispute; whether the agreed facts are such as to allow or require licensing under the statute.

[4] The applicable rules are well stated in *LundBerg:*
"Mandamus is a discretionary writ and will issue against a public

These rules do not prohibit issuance of mandamus in this case. When plaintiff claims the license was arbitrarily refused or that the board abused the discretion granted it under the statute, mandamus may issue to compel issuance of a license. *Wilson v Michigan State Board of Registration in Medicine,* 228 Mich 25; 199 NW 643 (1924), *Price v Township Board of Oakfield Township,* 182 Mich 216, 222; 148 NW 438 (1914).

Mandamus in the Court of Appeals[5] is the proper method to test the board's denial of licenses. Although the denial order meets the literal requirements for circuit court appellate review under MCLA 600.631; MSA 27A.631 and GCR 1963, 706, the circuit court's lack of authority to grant affirmative relief, in this case compel issuance of a license by a state board, makes relief available under that route inadequate.[6] See 3 Honigman & Hawkins, Michigan Court Rules Annotated, pp 612–613. This Court is the appropriate

official only to compel the enforcement of a clear legal duty. *Livonia Drive-In Theater v Livonia,* 363 Mich 438; 109 NW2d 837 (1961). Ordinarily the act requested must be of a ministerial nature. However, the execution thereof may involve some measure of discretion. *Michigan Dental Society v Secretary of State,* 294 Mich 503; 293 NW 865 (1940). If the act requires some discretion but is mandated by statute and the officer failed to carry out the provisions of the statute the courts may order him to do so. *Bischoff v County of Wayne,* 320 Mich 376; 31 NW2d 798 (1948)." 57 Mich App at 329.

[5] At the time these actions were begun mandamus against a state officer was proper only in the Supreme Court or the Court of Appeals. MCLA 600.4401; MSA 27A.4401. With the amendments to RJA § 4401 enacted by 1976 PA 317 the action against a state officer is proper in the Court of Appeals or the circuit court at the option of the party commencing the action.

[6] As far as the Attorney General's claim that denial of the license was a contested case within the meaning of the Administrative Procedures Act, MCLA 24.201 *et seq.;* MSA 3.560(101) *et seq.,* it is clear that applications under § 9 are not contested cases. There is no notice or hearing requirements for these applicants. *See Kelly Downs, Inc v Racing Commission,* 60 Mich App 539; 231 NW2d 443 (1975). Even if the requirements of §§ 20 and 23 apply to § 9 applicants, the board did not follow the required procedures here.

forum to decide the questions raised by the board's act of denying the licenses based on its interpretation of the statute.[7]

## II

Having decided that the mandamus action is proper, it is still necessary to determine if mandamus relief is appropriate. Plaintiffs claim that it is because the board's interpretation of the statute was an abuse of discretion which resulted in an arbitrary denial of licenses.

Both plaintiffs sought licenses under § 9. That section provides:

"A person upon application to the board dated within 1 year after the effective date of this act, and upon payment of the required license fee, shall be issued an examiner's license hereunder, without examination, if he satisfies the registration requirements established by the board and satisfies the board by affidavit or otherwise that he is qualified as follows:

"(a) He has either 1 of the following:

"(i) He has actually engaged in the occupation, profession or practice as an examiner prior to January 1, 1969, and continuously since that time, utilizing exclusively during that period instrumentation which satisfies the requirements of section 4.

"(ii) He has actually engaged in an internship training program, or similar arrangement on a full-time basis prior to the effective date of this act or has satisfactorily completed such internship training program or similar arrangement and has engaged in the occupation, profession or practice as an examiner or intern prior to the effective date of this act, utilizing

[7] Jurisdiction in this Court could also be grounded on the fact that the Court of Appeals had the power to compel the board to issue final determinations on the licenses, 12 Callaghan's Michigan Pleading and Practice (2d ed), § 94.35, and specifically retained jurisdiction in the original order.

exclusively during that period instrumentation which satisfied the requirements of section 4.

"(b) He substantially fulfills the requirements for licensing as set forth in section 10. The board may issue temporary examiner's licenses to an applicant who otherwise qualifies under section 10 except for the time and experience factors set forth in section 10 to enable the fulfillment of these requirements by the applicant." MCLA 338.1709; MSA 18.186(9).

The board does not question Feist's compliance with the requirements of § 9(a). The board did reject Schweitzer's application on the basis that he failed to meet either of the requirements of § 9(a).

Schweitzer has been practicing lie detection by mechanical device since 1962. Section 9(a)(i) is satisfied when an examiner was practicing his profession before January 1, 1969, and continuously since then with approved equipment. The instrument Schweitzer used in his investigations was not equipment which satisfies the requirements of § 4 of the act, MCLA 338.1704; MSA 18.186(4). Schweitzer admits in his brief that the device he used was capable of measuring only galvanic skin response, one of the three components of the modern polygraph. See, Appendix B to Justice WILLIAMS' opinion in *People v Barbara,* 400 Mich 352, 419; 255 NW2d 171 (1977). Prior practice with a Stoelting Galvanoscope does not meet the requirements of § 9(a)(i).

In the detailed reasons finally issued for denying Schweitzer's license the board also found that he could not qualify under § 9(a)(ii) because he did not complete "his internship training, such as it was, prior to the effective date of this act". Schweitzer argues that effective date as used in § 9 means the internship program must have been completed by the compliance date which the board determined

to be July 15, 1975. See note 2. Schweitzer claims he finished his program before July 15, 1975.

One of the well established rules of statutory construction is that words be given a common construction according to the generally accepted meaning unless it appears from the context or otherwise in the statute that a different sense was intended. 21 Michigan Law and Practice, Statutes, § 88. Effective date, as the phrase is used in discussing legislative action, means the date upon which an act becomes law and is enforceable. In Michigan that date is governed by Const 1963, art 4, § 27.

This construction is appropriate even if Schweitzer's argument concerning the purpose of the grandfather clause is accepted. If the purpose of the section is to allow those already practicing in the field to continue to practice after the state begins to regulate it,[8] then they must in fact have been practicing *before* the act became law. Schweitzer's program of internship[9] with approved equipment ran from November of 1973 to April of 1974. This was after the effective date of the act and does not meet the requirements of § 9(a)(ii). The date on which the board enforces the penalty provisions of the act has no bearing on the statutory requirements for obtaining a license under the act.

### III

The board rejected Feist's license solely because he did not meet the requirements of § 10(d)(ii).

---

[8] *See, Superx Drugs Corp v State Board of Pharmacy,* 378 Mich 430, 446; 146 NW2d 1 (1966) (opinion of DETHMERS, J.)

[9] It is unnecessary in this decision to rule on whether the intern program relied upon by Schweitzer is sufficient to satisfy the requirements of the act.

Section 9(b) allows an applicant to be licensed under § 9 if he meets one of the requirements of § 9(a) and (substantially fulfills) the requirements of § 10.

Section 10(d)(ii) provides:

"Upon application and payment of the required fee, a person is qualified to receive a license as an examiner:

\* \* \*

"(d) Who has either 1 of the following:

"(i) \* \* \*

"(ii) A high school diploma or its equivalent from an accredited high school and at least 5 years of continuous investigative experience with a recognized governmental law enforcement or governmental investigative agency." MCLA 338.1710(d)(ii); MSA 18.186(10)(d)(ii).

The board has taken the position that to substantially comply with this provision the prior investigative experience must be governmental in nature. By resolution, the board interpreted the "substantially fulfills" language of § 9(b) to require strict compliance with all § 10 requirements except § 10(f), (j) and (k).

This interpretation is much too narrow. It requires not substantial compliance, but absolute compliance with those requirements which the board has, on its own initiative, chosen to enforce. *Cf., People v Butler,* 387 Mich 1, 8; 195 NW2d 268 (1972). The substantially fulfills requirement of § 9 applies to each of the requirements of § 10 and means the' applicant must have or be the equivalent of the specific legislative requirement. *Cf., Rogers Plaza, Inc v S S Kresge Co,* 32 Mich App 724, 745–746; 189 NW2d 346 (1971) (substantial performance means not the exact thing promised, but something just as good). Stated another way, an applicant must meet each of the statutory

requirements of § 10 or a reasonable equivalent to take advantage of § 9(b).

Feist is entitled to a license under this proper standard. If investigative experience has any relevance to qualification as a polygraph examiner, certainly private experience as a state licensed and regulated private investigator, MCLA 338.821 *et seq.;* MSA 18.184(1) *et seq.,* is the equivalent of governmental experience for purposes of § 9(b) and § 10(d)(ii). Feist has been a private investigator since 1960 and substantially fulfills the requirements of § 10(d)(ii) in regard to investigative experience.

## IV

The decision on each application renders discussion of the equal protection challenge to § 10(d)(ii) as an unreasonable discrimination between high school graduates with five years of governmental investigative experience and high school graduates with five years private investigative experience unnecessary.

Plaintiff Schweitzer's complaint for mandamus is denied. Plaintiff Feist's complaint for mandamus is granted and the board is ordered to issue him a regular examiner's license under § 9.