FERENCY v SECRETARY OF STATE

Docket No. 77061. Submitted July 9, 1984, at Detroit.—Decided October 9, 1984.

Zolton Ferency brought an action against the Secretary of State, the Director of the Elections Division, and the Department of State seeking a declaration that the defendants were required to perform certain statutory duties regarding the selection of delegates for the 1984 Democratic national convention. Plaintiff alleged that the selection process adopted by the Democratic State Central Committee, that of holding party caucuses, and the formulas for allocation of delegates denied the voters equal protection. The Ingham Circuit Court, Carolyn Stell, J., viewed the complaint as a request for mandamus against the defendant state officials and found that plaintiff had failed to show that defendants had a clear legal duty to act in the manner requested. The action was dismissed. Plaintiff appealed, alleging that the trial court erred in treating the action as one for mandamus and in dismissing the action. *Held:*

1. Assuming that the party rules regarding delegate selection and allocation remain in place, the issue is capable of repetition and, therefore, is not moot.

2. Although plaintiff apparently requested declaratory relief, that relief clearly encompassed a mandate to state officials to perform their duties. The trial court was free to inquire into the true nature of the relief sought and to treat the complaint as one for mandamus.

3. Plaintiff failed to show that the defendants had a clear duty to regulate the delegate selection process. The election statutes provide for questions regarding delegate selection to be resolved within the political party. Furthermore, the caucuses were not "elections" as defined by statute.

4. The delegate selection process is not "state action" for purposes of equal protection analysis.

Affirmed.

REFERENCES FOR POINTS IN HEADNOTES

[1] 1 Am Jur 2d, Actions § 56.

[2] 52 Am Jur 2d, Mandamus §§ 7, 12, 46-50.

[3, 4] 22 Am Jur 2d, Declaratory Judgments § 9 *et seq.*

[5, 6] 25 Am Jur 2d, Elections §§ 117, 118, 126, 128 *et seq.*

1. Actions — Moot Case.

Generally, a case is not moot if the issues sought to be litigated are capable of repetition.

2. Mandamus — Adequate Remedy.

An action for mandamus against a state officer may be brought in the Court of Appeals or the circuit court; mandamus is inappropriate, however, where there is another adequate remedy in law or in equity.

3. Actions — Declaratory Relief — Availability of Remedy.

The availability of other remedies, such as mandamus and quo warranto, does not preclude an award of declaratory relief.

4. Actions — Declaratory Relief — Mandamus.

A court is free to inquire into the true nature of the relief sought where a plaintiff has requested declaratory relief which encompasses a mandate to state officials to perform their duties, thus blurring the distinction between declaratory relief and mandamus.

5. Statutes — Political Parties — Selection of Delegates.

The Legislature has evidenced an intent to defer to the intraparty decision-making process in the selection and allocation by political parties of delegates to a national convention, leaving resolution of such questions to the political party itself (MCL 168.618; MSA 6.1618).

6. Elections — Political Parties — Selection of Delegates.

The Democratic Party caucuses held in 1984 did not fall within the statutory definition of "election" and were therefore not subject to the state election laws, nor did the party's delegate selection process constitute "state action" for purposes of finding a violation of voters' constitutional rights (MCL 168.2; MSA 6.1002).

*Zolton Ferency, in propria persona.*

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Gary P. Gordon,* Assistant Attorney General, for defendants.

Before: Beasley, P.J., and J. H. Gillis and R. B. Martin,* JJ.

---

* Retired circuit judge, sitting on the Court of Appeals by assignment.

PER CURIAM. Plaintiff, Zolton Ferency, appeals as of right from an order of the Ingham County Circuit Court dated March 9, 1984, which dismissed his complaint against the Secretary of State and the Director of the State Elections Division.

On February 6, 1984, plaintiff filed a complaint against defendants seeking a declaratory judgment and certain affirmative relief regarding the then up-coming Democratic Party state caucuses. Plaintiff claims to have exhausted his administrative remedies prior to filing his complaint by requesting similar relief from defendant Secretary of State. In particular, plaintiff requested that defendants perform certain statutory duties regarding the selection of delegates for the Democratic national convention. He prayed for the following relief:

"I. That this Court adjudge and declare that the establishment and conduct of the presidential preference caucuses presently scheduled for March 17, 1984, by the DSCC, constitutes public business and/or state action and must provide for guarantees which will protect the constitutional and legal rights of those eligible to participate.

"II. That this Court adjudge and declare that notice of the date, time and place of said caucuses be given to all Democratic voters regardless of their ability to pay party membership dues.

"III. That this Court adjudge and declare that requiring caucus participants to disclose or expose openly their registrations of presidential preference or other choice is violative of constitutional and/or statutory provisions.

"IV. That this Court adjudge and declare that the Defendants herein shall forthwith prepare and administer such other rules, regulations and instructions for the conduct of elections, caucuses or other selection procedures for national convention delegates and alter-

nates so as to insure the protection of the constitutional and legal rights of all persons eligible to participate.

"V. That this Court order such other additional and further relief as may seem necessary, just and equitable to the Court."

On March 17, 1984, the Democratic Party held caucuses throughout Michigan. According to plaintiff's affidavit in support of his motion to expedite this appeal, which was granted, Walter Mondale received 49% of the caucus votes, Gary Hart received 31% of the votes, and Jesse Jackson received 16%. Thereafter, the Michigan Democratic State Central Committee allocated delegates to the national convention according to DSCC rules, as follows: Mondale received 78 delegates (57%), Hart received 49 delegates (36%), and Jackson received 9 delegates (7%). Plaintiff's affidavit also states that he is an official of the Jackson for President Committee and that he believes thousands of Jackson voters were denied equal protection under the law due to the DSCC's delegate allocation procedures. Plaintiff's appellate brief makes no mention of his affiliation with the Jackson campaign and instead argues that the rights of the electorate at large have been violated.

On the filing of the complaint, the trial court issued an order to show cause. In response, defendants filed a motion to dismiss. Defendants argued that since plaintiff's complaint was in reality a request for a writ of mandamus, it should be dismissed for failure to state a cause of action under GCR 1963, 117.2(1). The circuit court viewed the complaint as a request for mandamus against state officials. It declined to grant the requested relief because plaintiff failed to show that defendants had a clear legal duty to act in the manner requested.

On appeal, plaintiff claims that the trial court erred by treating plaintiff's complaint as a mandamus action and dismissing it for failure to state a claim. For the reasons to be indicated, we agree with the trial court and affirm.

Defendants initially argue that this appeal is moot, since the delegates have already been selected. Generally, a case is not moot if the issues sought to be litigated are capable of repetition, yet evade review.[1] At this point in time, it is extremely difficult, if not impossible, to determine whether plaintiff's contentions are moot. *Assuming* that the rules regarding delegate selection and allocation remain in place and viable, the issue is capable of repetition and, therefore, is not moot.[2]

Defendants also argue that plaintiff, Zolton Ferency, lacks standing to bring this action. A similar argument was made in *Ferency v Austin,*[3] *(Ferency II)* where the Federal Sixth Circuit Court of Appeals, in affirming the denial of relief to plaintiff, did not rest its decision on the standing issue. Since we deny relief here on a different basis, we do not find it necessary to decide whether plaintiff has standing to launch his attack on the procedures employed by the Democratic Party in selecting delegates to the national convention.

The question remains whether the trial court properly treated plaintiff's complaint as a request for mandamus. The general rules regarding the issuance of a writ of mandamus were summarized

---

[1] See *Roe v Wade,* 410 US 113; 93 S Ct 705; 35 L Ed 2d 147 (1973), *reh den* 410 US 959; 93 S Ct 1409; 35 L Ed 2d 694 (1973); *Swinehart v Secretary of State,* 27 Mich App 318, 320; 183 NW2d 397 (1970); *Grano v Ortisi,* 86 Mich App 482, 487; 272 NW2d 693 (1978).

[2] See *Ferency v Austin,* 666 F2d 1023 (CA 6, 1981) *[Ferency II].*

[3] *Id.*

in *Coates v Attorney General*[4] as follows:

"This Court has mandamus jurisdiction over state officials under GCR 1963, 714.1(1). An action against a state officer is proper in the Court of Appeals or the circuit court at the option of the party commencing the action. MCL 600.4401; MSA 27A.4401; *Schweitzer v Board of Forensic Polygraph Examiners*, 77 Mich App 749, 753, fn 5; 259 NW2d 362 (1977), *lv den* 402 Mich 837 (1977). When there is a plain, direct and adequate alternative remedy, courts will not permit the use of a writ of mandamus. *Coffin v Detroit Bd of Ed*, 114 Mich 342; 72 NW 156 (1897). Mandamus is inappropriate where there is another adequate remedy in law or in equity. *Clarke v Hill*, 132 Mich 434; 93 NW 1044 (1903). See, also, *Oakland County Bd of Road Comm'rs v State Highway Comm*, 79 Mich App 505; 261 NW2d 329 (1977), *lv den* 402 Mich 907 (1978), and the cases cited therein."

However, although the existence of other remedies may preclude issuance of a writ of mandamus, the availability of other remedies does not preclude declaratory relief. In *Lord v Genesee Circuit Judge*,[5] a voter requested a declaratory judgment against the Secretary of State, which would have forced the Secretary to accept nominations for a circuit court vacancy. In reviewing the circuit court's refusal to render declaratory relief, this Court stated:

"Admittedly, plaintiff had other remedies than declaratory relief and could have sought mandamus and quo warranto relief in the Court of Appeals. The availability of other remedies does not preclude declaratory relief, however. GCR 1963, 521.1 and 521.3. Plaintiff is entitled to seek declaratory relief in spite of the availability of relief by way of quo warranto and mandamus.

---

[4] 120 Mich App 816, 820-821; 328 NW2d 113 (1982), clarified in part, *Coates v Attorney General*, 126 Mich App 370; 337 NW2d 343 (1983).

[5] 51 Mich App 10; 214 NW2d 321 (1973).

The circuit court had jurisdiction to grant the declaratory relief prayed for."[6]

However, the *Lord* Court ignored the fact that the form of the circuit court's judgment was improper and concurred with its finding that the plaintiff failed to establish a basis for declaratory relief.[7]

Although somewhat ambiguously, plaintiff herein apparently requested declaratory relief. However, the requested relief clearly encompassed a mandate to state officials to perform their duties. Because of this, the circuit court was free to inquire into the true nature of the relief sought.[8] This blurring of the distinction between mandamus and declaratory relief is also apparent in *Coates, supra.* There, this Court analyzed a mandamus action regardless of the fact that the complaint also requested declaratory relief. *Coates* impliedly supports the argument that this Court should look at the true nature of the relief requested.[9]

Plaintiff argues that he had a clear right to petition the circuit court for declaratory relief after he exhausted his administrative remedies. In *Human Rights Party v Michigan Corrections Comm,*[10] plaintiff (represented by Ferency) prayed for a declaratory ruling that prison overcrowding violated prisoners' rights. The complaint also requested an injunction to force corrections department officials to enforce statutes to alleviate the overcrowding.[11] *Human Rights Party* is similar to the instant appeal. Although declaratory relief

[6] *Id.,* p 17.

[7] *Id.,* p 19.

[8] *Minarik v State Highway Comm'r,* 336 Mich 209; 57 NW2d 501 (1953).

[9] *Coates v Attorney General, supra,* p 823.

[10] 76 Mich App 204; 256 NW2d 439 (1977).

[11] *Id.,* p 207.

was requested in both cases, the type of relief requested would have forced the court to direct state officials to perform statutorily mandated duties. However, the *Human Rights Party* Court declined to determine whether such relief was proper. It only determined that the circuit court had jurisdiction to entertain such an action. *Human Rights Party* does not expressly prevent the circuit court from reviewing the true nature of the relief sought. Apparently, the circuit court in *Human Rights Party* did not treat the complaint as requesting mandamus. Therefore, this Court was not faced with the same issue as is presented in the case at bar.

In the instant case, plaintiff failed to show that defendants had a clear legal duty to regulate the delegate selection process. Plaintiff failed to show that the Michigan election law requires defendants to notify all democratic voters of the caucus dates. Furthermore, even after viewing plaintiff's complaint in the most favorable light, it appears that he failed to establish that defendants had any duty to perform the acts requested.

MCL 168.618; MSA 6.1618 reads:

"The allocation of all delegates and alternates to a national convention shall be made by the state central committee of each party in accordance with the provisions of this act and shall be certified to the secretary of state. A minimum of 2/3 of the state's delegates shall be allocated to congressional districts and at least 2 delegates shall be allocated to each district. All delegates shall be registered electors of this state. Delegates elected from congressional districts shall be registered electors of those districts. All national convention delegates shall be chosen according to procedures and any other qualifications, as long as they are not inconsistent with those in this act, as may be established by the state central committee of that political party. The procedures and qualifications may include, but are not

necessarily limited to guarantees that discrimination on the basis of race, creed, color, sex, age, national origin, or economic status does not occur."

This section indicates that the DSCC has substantial power to prescribe rules regarding the delegate selection process. It also evidences the Legislature's intent to defer to the intra-party decision-making process. In short, questions regarding the process of delegate selection and allocation are best resolved within the political party itself. Plaintiff has not persuaded this Court that it should interfere with such process.

Plaintiff next argues that the trial court erred in holding that the March caucuses were not "elections" under the definition of "election" found in MCL 168.2; MSA 6.1002, which reads:

"The term 'election', as used in this act, shall mean and be held to include any election and primary election, at which the electors of the state or of any subdivision thereof choose or nominate by ballot public officials or decide any public question lawfully submitted to them. The term 'election' is not synonymous with the term 'civil appointment' as such term appears in section 9 of article 4 of the state constitution."

Plaintiff advanced an identical argument in *Ferency v Austin, (Ferency I)*,[12] in the federal district court. In that case, which, as previously discussed, was affirmed by the Sixth Circuit, Ferency sought to compel the Michigan Secretary of State to force the Democratic Party to participate in the 1980 Michigan Presidential primary and to elect a national candidate in accordance with the Michigan election law. The facts of *Ferency I* are somewhat different from those in the instant appeal. In 1980, Ferency attacked the constitutionality of the Mich-

---

[12] 493 F Supp 683 (WD Mich, 1980) *[Ferency I]*.

igan election law. Today, he seeks enforcement by state officials of those same laws. We believe the court's decision in *Ferency I* controls.

Plaintiff now argues that *Ferency I* is inapplicable because the party rules have changed since 1980. He states that the 1980 caucuses were limited to elected precinct delegates and party members. The March, 1984, caucuses were open to any Michigan voter, provided that he or she signed a statement confiming that the person registering was a Democrat.[13] Plaintiff contends that since participation in the Michigan caucuses was the only way a voter could participate in the nomination of a candidate, the circuit court erred in holding that the caucuses were not "elections" under the statute.

This Court believes that the principles enunciated in *Ferency I* are as applicable today as they were in 1980. The Legislature was presumably aware of this problem after the federal district court's opinion was published. Although four years have passed, the word "caucus" remains glaringly absent from the election law definitions.[14] If the Democratic voters of this state did not choose to participate in the caucuses, that was their prerogative. In fact, their ability to participate in the nominating process has been expanded by the new party rules. Therefore, plaintiff's argument that some "fundamental exercise of American democracy has been denied" is unpersuasive. Therefore, we embrace the reasoning found in *Ferency I* and hold that the Democratic caucuses do not fall within the definition of "election" found in MCL 168.2; MSA 6.1002.

[13] See affidavit of Richard Wiener, Chairperson of the Michigan Democratic Party. See also, the 1984 Michigan Democratic Party Delegate Selection and Affirmative Action Plan.

[14] See 493 F Supp 683, 698.

Plaintiff's final argument is a "state action" argument identical to the one advanced in *Ferency I*. On appeal, the Sixth Circuit neither affirmed nor rejected this aspect of the holding in *Ferency I*.[15] The Sixth Circuit declined to decide the issue because the plaintiff failed to show a violation of his federal constitutional rights. The exclusion of some voters from the delegate selection process does not constitute a denial of federal constitutional rights.[16] The Sixth Circuit's opinion, although not expressly affirming the "state action" holding of the district court in *Ferency I*, certainly leans in that direction. We, therefore, decline to find that the delegate selection process constitutes "state action" as argued by plaintiff.

Affirmed.

---

[15] 666 F2d 1023, 1028.

[16] *Cousins v Wigoda,* 419 US 477; 95 S Ct 541; 42 L Ed 2d 595 (1975); *Democratic Party of the United States v Wisconsin ex rel LaFollette* 450 US 107; 101 S Ct 1010; 67 L Ed 2d 82 (1981).