*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

WAYNEVEST, LLC, INVESTMENT REALTY
SERVICES, LLC, and CHRISTOPHER L.
GARNER,

UNPUBLISHED
July 9, 2020

Plaintiffs-Appellants,

v

No. 349468
Macomb Circuit Court
LC No. 2018-4340-CZ

CITY OF WARREN,

Defendant-Appellee.

Before: MURRAY, C.J., and JANSEN and MARKEY, JJ.

PER CURIAM.

Plaintiffs appeal by right the trial court's order granting summary disposition in favor of defendant City of Warren (the city). We affirm in part and reverse and remand in part.

## I. BACKGROUND

### A. EARLIER FEDERAL LITIGATION INVOLVING THE CITY

In September 2015, plaintiff Investment Realty Services, LLC, along with two entities that are not involved in the instant action, NILI 2011, LLC, and EETBL, LLC, on behalf of themselves and a class of similarly-situated persons, filed a lawsuit against the city in the United States District Court for the Eastern District of Michigan, Southern Division. The action was "brought on behalf of a class of all persons who own residential real property in the City and have been fined for failing to have a certificate of compliance for a rental property." The federal complaint alleged that the city had adopted the International Property Maintenance Code (IPMC), 2009, which was intended "to regulate the condition and maintenance of all premises, including residential and non-residential buildings and structures by providing the standards essential to ensure that structures and premises are safe, sanitary and fit for occupation and use." Warren Code of Ordinances (WCO), § 28-1. The federal plaintiffs asserted that the city had enacted ordinances that governed and regulated the operation of rental property, requiring the owners of rental real estate to register the property, obtain an inspection of the property, complete any necessary repairs under the WCO,

and thereafter procure a certificate of compliance. The federal plaintiffs further asserted that the city utilized code officials to inspect rental properties, ensuring compliance with the IPMC.

The federal plaintiffs contended that the IPMC mandated that a notice of a violation be initially served on the owner of rental property before the owner could be prosecuted for a violation based on an alleged failure to comport with demands resulting from an inspection. The complaint noted various IPMC requirements associated with the notice, including that it be in writing, describe the property, identify the violation, allow for correction by giving a reasonable time to make repairs as needed to comply with the IPMC, inform the owner of the right to appeal, and warn owners that their land could be subjected to a lien for a violation. The federal plaintiffs alleged that "[t]he form of the notices under the IPMC are procedural due process requirements intended to provide the owner with adequate notice and a meaningful opportunity to be heard in the event of any dispute over the alleged violations of the applicable code." According to the federal plaintiffs, the IPMC provided for an appeal process and required an independent board of appeals to hear disputes. But the city, under the WCO, had "struck the entire section of the IPMC pertaining to appealing decisions of the code enforcement officials." The federal complaint set forth numerous and repeated instances of blatant notice and procedural compliance failures by the city under the IPMC.

The federal complaint alleged violations of due process for failure to provide proper notice and a meaningful opportunity to be heard; violations of due process for code provisions that were void for vagueness; violations of the Fourth Amendment based on warrantless searches of rental properties; a claim for assumpsit seeking restitution for improper penalty assessments; municipal liability for unlawful policies and customs; a right to recovery under 42 USC 1983; and claims requesting injunctive and declaratory relief. The federal court certified two classes in May 2017.[1]

In May 2018, the parties in the federal lawsuit entered into a settlement agreement. Under the settlement agreement, the city did not admit fault or liability, but it did agree "to settle the claims against it by making up to a total of $750,000.00 available to fund th[e] settlement" and to waive "residential rental re-inspection fees for four years[.]" The parties stipulated that "the value of the waiver [was] $240,000.00." The settlement agreement also required the city to seek administrative warrants for any required inspections. It additionally provided that the city would "comply with all proper notice requirements set forth in the IPMC, including, but not limited to

---

[1] The first class was "[a]ll persons and entities who paid rental registration and inspection fees to the [c]ity . . . pursuant to the ordinance permitting searches without a warrant." The second class was defined as follows:

> All persons and entities that currently own or at one time owned any parcel of real property located within the [c]ity . . . for the purpose of renting or leasing a residential structure or multiple family unit on that property who or which has been issued a civil infraction for failing to obtain a certificate of compliance and subsequently paid them, stemming from an inspection under the IPMC and the [WCO], at any time since September 28, 2009 and through the date of final judgment.

notice of the right to appeal a violation to an impartial Board of Appeals." The settlement agreement further indicated that it "shall be binding upon and inure to the benefit of the Parties, and to their respective agents, employees, representatives, trustees, officers, directors, shareholders, divisions, parent corporations, subsidiaries, affiliates, heirs, assigns, and successors in interest." Especially relevant here, the settlement agreement contained a paragraph titled "Continuing Jurisdiction," which provided:

> Without affecting the finality of the final judgment, the parties will ask the Court to retain continuing jurisdiction over the Litigation and the Parties, including all members of the Settlement Class, the administration and enforcement of this Agreement and the settlement, and the benefits to the Settlement Class hereunder, regarding the implementation, enforcement, construction, and interpretation of this Agreement, the order preliminarily approving the settlement, and the Final Approval Order and final judgment. Any dispute or controversies arising with respect to the interpretation, enforcement, or implementation of the Agreement shall be presented by motion to the Court.

The federal court preliminarily approved a settlement order on June 26, 2018.

## B. THE INSTANT LITIGATION

On November 5, 2018, plaintiff Investment Realty once again sued the city, joined by plaintiffs Waynevest, LLC, and Christopher L. Garner. The complaint alleged that Waynevest owned three rental properties in the city, that Investment Realty owned two rental properties in the city, and that the five real properties were all managed by Garner Properties & Management, LLC, whose president was plaintiff Garner. The complaint indicated that Investment Realty and Garner "were instrumental in holding [the city] accountable for [its] constitutional wrongs in the [federal] case." Plaintiffs complained that ever since the settlement in the federal case, the city had been engaged in acts of punishment and retaliation and "unlawfully issuing housing violations" with respect to plaintiffs' properties. Plaintiffs alleged that the WCO required all prospective non-owner-occupied properties to be registered and to have a rental certificate of compliance before they could be inhabited. Plaintiffs referenced and quoted WCO, § 28-18, which concerned license application forms for rental properties, and which, at the time of the complaint, provided:

> Application forms will be available at the rental division and shall include at least the following information and any other information that may be requested:
>
> (1) The name and address of the applicant. No post office boxes shall be accepted as a legal address.
>
> (2) The names and addresses of all owners of the rental dwelling.
>
> (3) The name, local address, and telephone number of the responsible local agent. No post office boxes shall be accepted.
>
> (4) The number of rental dwelling units in each rental dwelling and the address of the rental dwelling.

(5)  The authorization appointing a responsible local agent signed by both the owner and the responsible local agent.

(6)  The application for inspection.

(7)  Proof that no fees or debts are owed to the city as required by this article.

Plaintiffs asserted that rental license applications for their properties had been submitted to the city containing all of the information required by WCO, § 28-18.  Plaintiffs alleged that the city refused to process the rental license applications because they purportedly did not contain " 'accurate owner entity information.' "  Plaintiffs stated that they resubmitted the rental license applications showing LLC registrations, but the city again rejected the applications.  According to plaintiffs, the rejection notices, much to plaintiffs' surprise, came from the city's legal department instead of the city's building department, which typically received and processed rental license applications.  Plaintiffs contended that the rejection letter indicated that the rental license applications failed to include the names of all the members of the limited liability companies, the members' contact information, government identification numbers, and tenant signatures.[2] Plaintiffs argued that WCO, §§ 28-14[3] and 28-18, did not demand detailed corporate ownership

---

[2] The letter from the assistant city attorney was addressed to Garner and provided as follows:

Garner Properties has sent the City incomplete and inaccurate rental license applications for properties owned by Investment Realty Services, LLC. As stated in the instructions and on the application, you must provide the City with accurate owner entity information. The entity information must state all members of a limited liability company, their contact information, and a government identification number.

The City will not process incomplete or inaccurate applications. Failure to obtain a rental license for a tenant-occupied property will result in a blight ticket, which you may contest at an Administrative Hearings Bureau hearing.

An additional document sent by the city stated, in part, that a tenant's signature was also needed on the rental license application.

[3] Section 28-14 provides:

Owners of registered rental units with a valid certificate of compliance at the time of adoption of this article shall obtain a rental license before the expiration date of the existing certificate of compliance. Rental unit registration is construed to be an application for a rental license, and admission of fact by the applicant that the applicant is conducting a rental dwelling operation as defined by this article. It shall be the duty of all landlords to apply for the rental license as required by this article and obtain all necessary inspections, repairs, and/or approvals required and/or necessary to obtain the license. A registration fee, once tendered, may not be refunded or transferred.

information when applying for a rental license and did not require a tenant's signature for real property being registered for a rental license. Plaintiffs maintained that the rental license applications satisfied WCO, §§ 28-14 and 28-18.

Count I of the complaint sought a declaratory judgment "that the [c]ity cannot condition the processing of an application for a rental license on items and information not expressly set forth in [its] ordinance." Count II claimed an appeal of the city's decision. In Count III, plaintiffs alleged a void-for-vagueness due process claim, pointing to the language in WCO, § 28-18, that rental license application forms must include certain identified information "*and any other information that may be requested.*" (Emphasis added.) Count IV alleged another due process violation for the city's conduct in "refusing to process [plaintiffs'] rental license applications despite those applications complying with the [WCO]." Plaintiffs further alleged that the refusal to process the applications would result in blight fines for having unregistered rental properties. Also, still as part of Count IV, plaintiffs maintained that the city provided "no means or mechanism to challenge the re[jection] of the applications and enforces [its] ordinance in an arbitrary and discriminatory manner." Plaintiffs sought damages for the alleged due process violations. In Count V, plaintiffs alleged a violation of their First Amendment rights, contending that they were being punished by the city for "speaking out in opposition to and by challenging [the city] and its unconstitutional practices against landlords." In Count V, plaintiffs sought monetary damages incurred as a result of the city's retaliation against them for exercising their First Amendment rights. Count VI alleged a violation of equal protection, as plaintiffs were being singled out and treated differently than similarly-situated landlords. In Count VII, plaintiffs alleged a claim under 42 USC 1983, asserting that the city deprived plaintiffs of their constitutional right to make productive use of their properties. At the end of the complaint, in their prayer for relief, plaintiffs asked for a declaratory judgment proclaiming that the city is bound to process plaintiffs' rental license applications in conformity with the WCO, a judgment declaring a portion of the WCO arbitrary and capricious and unconstitutionally vague, an injunction to prevent further constitutional wrongs, and an award of damages.

Subsequently, the trial court issued a preliminary injunction, requiring the city to grant temporary rental licenses to plaintiffs, provided that plaintiffs submit rental license applications that contained all publicly available ownership information. On April 1, 2019, which was the same date that the court issued the preliminary injunction,[4] the city moved to dismiss plaintiffs' lawsuit. In the motion, the city claimed that in February 2019 the city council held a meeting and decided to amend the WCO. One of the amendments concerned WCO, § 28-18, which now provides:

---

[4] The hearing on the motion for a preliminary injunction was held on January 28, 2019, but the parties could not agree on the language for the order, which was finally resolved in a motion to settle the order. At the January hearing, the trial court stated that it was striking the "any other information" language in WCO, § 28-18, apparently because of its vagueness, but the order granting the preliminary injunction did not mention anything about striking the language in the ordinance.

A rental license applicant shall fill out an application on a form created by the rental inspection division. The application shall include all of the following information:

(1) The name and address (no post office boxes) of the applicant.

(2) The names and addresses of all owners of the rental dwelling. *If any owner of the rental dwelling is an entity, all members', managers', officers', directors', partners', proprietors', or beneficiaries' names, address, and copy of a government identification card.*

(3) *With the exception of an owner-occupied dwelling being rented or leased for a profit, tenant/occupant's name and signature.*

(4) The responsible local agent's name, local address (no post office boxes), telephone number, and a copy of a government identification card.

(5) The number of rental dwelling units in each rental dwelling and the address of the rental dwelling.

(6) If applicable, the authorization appointing a responsible local agent signed by both the owner and the responsible local agent.

(7) *Any other relevant information required for the effective administration of this article that the rental inspection division reasonably requests on its form.* [Emphasis added.]

In the motion to dismiss, the city contended that the "ordinance amendments[, which] codified the City's contentions in this case regarding reasonable interpretation of its lawful prior ordinance, became effective March 4, 2019, and were formally published on March 20, 2019." The city argued that the amendment of the WCO rendered moot plaintiffs' claims.[5] The city maintained that because the claims were moot, "any actions taken in furtherance of those claims prior to judgment—including the injunctive order settled . . . on April 1, 2019—are of no legal consequence . . . ." The city also argued that the trial court lacked "jurisdiction over [the] remaining claims arising from the settlement agreement in the federal litigation because such jurisdiction was retained by the federal court and claims related thereto must be asserted by motion in said court."

Plaintiffs filed a response to the city's motion to dismiss, initially noting that their complaint primarily stemmed from the city's rejection of the rental license applications based on purported missing information, which information, according to plaintiffs, was irrelevant and not

---

[5] The city made clear that it was not conceding that the pre-amendment version of the WCO was unlawful or unconstitutional; rather, the city asserted "that the prior ordinance was facially valid and enforceable in the reasonable exercise of its police power, and further, that its enforcement was lawful[.]"

expressly required by the pre-amendment WCO. Plaintiffs further argued that the city had "not changed its wrongful conduct by not demanding irrelevant information but instead amended its ordinance to include language, provisions[,] and terms that are unconstitutional, thus simply transforming their prior unconstitutional conduct to an unconstitutional ordinance." Plaintiffs also contended that their complaint was not moot because the newly-amended WCO would still "result in the same wrongful conduct currently complained of, which triggers the exception [to mootness] known as the 'capable of repetition' exception."[6] Plaintiffs additionally argued that if mootness applied, it would only require the dismissal of the one count seeking injunctive relief, as the complaint otherwise expressly requested an award of money damages related to past conduct by the city. Finally, plaintiffs claimed that the federal court "did not retain jurisdiction over the issues in this case pursuant to the express terms of the settlement agreement." Plaintiffs attached an affidavit by Garner, which contained averments consistent with the allegations in the complaint regarding the city's handling of the rental license applications.

In a reply brief, the city argued that plaintiffs' contention that the issues were not moot because they were capable of repetition was flawed because the "capable of repetition" principle also required a showing that the issues would forever evade judicial review if the mootness doctrine were applied. The city maintained that plaintiffs did not present any evidence or even allege that the amended version of the WCO would somehow evade judicial review if challenged. The city further retorted that to the extent that plaintiffs were raising new constitutional challenges, they were premature and not ripe for review. Next, the city reasserted that the federal settlement agreement, by its express terms, gave the federal court continuing jurisdiction, which would encompass the claims raised by plaintiffs in the instant lawsuit and would allow the trial court to decline exercising jurisdiction over the case. The city noted that plaintiffs' counsel was also counsel of record in the federal action. With respect to plaintiffs' argument that their request for money damages precluded dismissal, the city contended:

> [T]he City reached out to Plaintiffs before it filed the Motion to Dismiss to see if the Parties could reach a reasonable resolution. It offered to dismiss all of Plaintiffs' pending tickets. Plaintiffs inexplicably rejected the offer. Now, conveniently, they argue that the pending tickets somehow require the case to continue. On the City's part, it continues to be willing to dismiss the pending tickets. Therefore, Plaintiffs' argument that their claim of damages negates the mootness issue is insincere.

On April 22, 2019, the trial court conducted a hearing on the city's motion to dismiss. The trial court ruled from the bench in dismissing the action. The court's reasoning was not very clear. It initially observed that plaintiffs could have challenged the validity and administration of the prior ordinance in an appeal to the circuit court pursuant to the Administrative Procedures Act

---

[6] This argument was premised on the fact that WCO, § 28-18(7), as amended, included language that allowed the city's rental inspection division to demand "[a]ny other relevant information" for purposes of a rental license application.

(APA), MCL 24.201 *et seq.*[7]  The court then told plaintiffs' counsel that "the balance of your arguments are really within the jurisdiction of the federal case as for the application of the ordinance, the original viability and its application."  The trial court concluded the hearing by ruling that it was "satisfied that all issues that were before this Court relative to this matter have been resolved by the subsequent amendment to the ordinance, and therefore the motion is granted." It appears that the trial court granted the motion to dismiss on the basis of mootness, continuing federal court jurisdiction, and failure to file an appeal.  An order dismissing the case for the reasons stated on the record was entered on the day of the hearing.

Plaintiffs filed a motion for reconsideration, arguing that the amendment of the WCO only affected the count seeking declaratory relief related to the previous version of the WCO and that the ordinal amendment, at best, only stopped the city from being responsible for damages sustained post amendment.  Plaintiffs further maintained that the federal lawsuit was limited in scope and that the federal court did not have jurisdiction over plaintiffs' unrelated claims raised in the instant action.  Plaintiffs explained that the federal court's jurisdiction was restricted to enforcement of the settlement agreement and associated judgment and could in no way be construed as extending to "causes of action that did not get litigated in that [federal] action or that had not accrued at the time[.]"  Plaintiffs posited that the trial court's "findings were based on a mistake of fact and a mistake of law," constituting palpable error and requiring reversal, MCR 2.119(F).

The city responded to the motion for reconsideration.  The city now argued that plaintiffs had not exhausted their administrative remedies where they refused to take advantage of the hearing and appellate procedures afforded to them in the city's Administrative Hearings Bureau (AHB), which was established in 2015 to hear blight-violation challenges.  The city claimed that following those procedures would have provided plaintiffs with due process and appellate rights as required by law.  The city contended that plaintiffs did not have a right to appeal to the trial court because they had not even attempted to invoke their administrative remedies.  The city further asserted that plaintiffs were fully aware of the AHB, considering that Garner Properties & Management, LLC, had previously challenged the city's refusal to accept incomplete rental license applications.[8]  The city also argued that plaintiffs had not suffered any damages that mandated

---

[7] As indicated earlier, Count II of plaintiffs' complaint in fact claimed an appeal of the city's rejection of the rental license applications.

[8] The city submitted documents showing that in 2017, Garner Properties & Management, LLC (Garner Properties), and the city engaged in a dispute in the AHB regarding the alleged insufficiency of owner/member information in a rental license application connected to a property managed by Garner Properties and owned by a limited liability company.  The property is not at issue in the present action, and the city initiated the proceedings.  In February 2018, the Administrative Hearings Officer concluded that the city had shown a legitimate interest in obtaining the owner/member information, while also finding that Garner Properties had made genuine attempts to meet its obligations.  The Officer ruled that Garner Properties was responsible for attempted failure to lease property without a license and for failure to attempt to submit a rental application for renewal.  The decision was not appealed.

continuation of the lawsuit.[9]  Finally, the city proffered that plaintiffs' assertions of retaliation arose directly from the federal lawsuit, giving the federal court continuing jurisdiction over any retaliation claims.

The trial court decided to hold a hearing on plaintiffs' motion for reconsideration, which was conducted on June 3, 2019.  The trial court denied the motion at the hearing.  Counsel for plaintiffs noted that tenants were alleging that they did not have to pay rent because the rental properties were not registered, thereby causing plaintiffs to lose income.  The trial court observed that it had already determined that WCO, § 28-18, before its amendment, "was not constitutional." We surmise that this was a reference to the court's apparent act of striking the "any other language" phrase in the ordinance, which ruling never found its way to an order.  The trial court indicated multiple times that plaintiffs were splitting their cause of action between the federal court and the state court, which the court found to be improper.  The court then stated that plaintiffs were allowed to appeal the city's rejection of the rental license applications, which they had done "through one form or the other" and had "prevailed."  It appears that, when noting that plaintiffs had "prevailed," the trial court was either referencing the fact that the city had amended the WCO or that the court had struck part of WCO, § 28-18, in its earlier form.  Plaintiffs argued that regardless of the amendment, they were still seeking damages for the alleged prior constitutional violations. Plaintiffs further argued that they did not have to exhaust any administrative remedies in making a facial constitutional challenge of the ordinance, that an administrative remedy was only available to challenge a blight ticket, which was not the basis of plaintiffs' suit, and that the federal court's continuing jurisdiction did not encompass the claims regarding the rental license applications.

The trial court proceeded to explain that plaintiffs' only claim or issue was that the city was demanding unnecessary information for purposes of the rental license applications and that said matter "ha[d] been resolved."  The court continued:

> [A]nd you had an administrative process that would have gotten you here, and you had an opportunity to bring it in the federal suit as well as when you challenged the constitutionality of the ordinance.
>
> I don't believe the splitting of the cause of action was appropriate. I think you had the administrative relief, but you still would have been on appeal entitled to attorney fees, I believe, but - -
>
> * * *
>
> I'm not awarding any [attorney fees] because I'm still of the opinion, as I initially said, that the issues are moot here, that there's splitting of the cause of action. There was an administrative process that could have been filed, that the

---

[9] On May 29, 2019, in the AHB and by agreement of the city, an order of dismissal with prejudice was entered with respect to tickets issued against Investment Realty arising out of rejected rental license applications.  The city asserted that around this time it also processed plaintiffs' rental license applications.

claims here are without merit as far as the other causes of action. The Court is not reinstating the case.

An order denying the motion for reconsideration for the reasons stated on the record was entered after the hearing. Plaintiffs appeal by right.

## II. ANALYSIS

## A. STANDARDS OF REVIEW

"We review de novo whether an issue is moot." *Garrett v Washington*, 314 Mich App 436, 449; 886 NW2d 762 (2016). Jurisdictional issues are also reviewed de novo on appeal. *Estes v Titus*, 481 Mich 573, 578; 751 NW2d 493 (2008). This includes review of a decision regarding whether a party has exhausted administrative remedies, which issue implicates a court's jurisdiction to hear a case. *Papas v Mich Gaming Control Bd*, 257 Mich App 647, 656-657; 669 NW2d 326 (2003). A ruling on a motion for summary disposition is likewise subject to de novo review. *Loweke v Ann Arbor Ceiling & Partition Co, LLC*, 489 Mich 157, 162; 809 NW2d 553 (2011). This Court reviews for an abuse of discretion a trial court's decision on a motion for reconsideration. *Churchman v Rickerson*, 240 Mich App 223, 233; 611 NW2d 333 (2000).

## B. MOOTNESS

In *B P 7 v Bureau of State Lottery*, 231 Mich App 356, 359; 586 NW2d 117 (1998), this Court discussed the mootness doctrine, observing:

> As a general rule, an appellate court will not decide moot issues. A case is moot when it presents only abstract questions of law that do not rest upon existing facts or rights. An issue is deemed moot when an event occurs that renders it impossible for a reviewing court to grant relief. [Citations omitted.]

But "this Court will entertain cases that are technically moot if the issues involved are of public significance and are likely to recur in the future and yet evade judicial review." *Contesti v Attorney General*, 164 Mich App 271, 278; 416 NW2d 410 (1987). This Court has similarly stated that "a case is not moot if the issues sought to be litigated are capable of repetition, yet evade review." *Morales v Mich Parole Bd*, 260 Mich App 29, 32; 676 NW2d 221 (2003), citing *Ferency v Secretary of State*, 139 Mich App 677, 681; 362 NW2d 743 (1984). The United States Supreme Court in *Denkins v Monaghan*, 484 Mich 193, 200 n 4; 108 S Ct 523; 98 L Ed 2d 529 (1988), stated that the mere voluntary cessation of allegedly unlawful conduct does not make a case moot.

Plaintiffs first argue that their "claims are not mooted by the new Amendment because the harm has not been completely removed by the new amended ordinance." Accurately citing *Cam I, Inc v Louisville/Jefferson Co Metro Gov't*, 460 F3d 717, 720 (CA 6, 2006), plaintiffs maintain that where changes in the law, such as the amendment of an ordinance, do not remove the harm or threatened harm underlying the parties' dispute, the case is not moot and remains suitable for judicial determination. Plaintiffs note that they had alleged that WCO, § 28-18, in pre-amendment form, was unconstitutionally vague and allowed for arbitrary and discriminatory enforcement because of the "any other information" language. And plaintiffs insist that the amended version

of WCO, § 28-18, is similarly unconstitutionally vague where it allows the rental inspection division to demand "[a]ny other relevant information" for purposes of a rental license application. Plaintiffs thus argue that they will likely be subjected to continuing unlawful conduct by the city, i.e., the wrongs are capable of repetition that would evade review.

This particular argument is not persuasive. If the city were to make informational demands of plaintiffs under the amended version of WCO, § 28-18 with respect to rental license applications that plaintiffs felt were unlawful demands, plaintiffs could obtain review of the ordinance and the city's conduct in a future legal proceeding.[10] But plaintiffs also argue that if the amendment implicated or triggered the mootness doctrine, only the claim for injunctive relief enjoining further enforcement of the old ordinance would be moot, not any of the other claims alleged by plaintiffs. We agree. The fact that the city amended the CWO did not undo allegedly unconstitutional or retaliatory *conduct* committed by the city, nor did the amendment negate or wash away any alleged damages that plaintiffs may have already been sustained. For example, plaintiffs alleged that the city violated their First Amendment and equal protection rights by retaliating against them and by treating them differently from other landlords when the city rejected the rental license applications. The amendment of the CWO had no bearing on these claims and did not render them moot.[11] As yet another example, if the pre-amendment version of WCO, § 28-18, was unconstitutionally vague, as the trial court apparently believed, and plaintiffs could show damages flowing from the application of the unconstitutional ordinance, the subsequent amendment of WCO, § 28-18, would not have rendered a claim for those damages moot.[12] In sum, other than a claim seeking to enjoin continued enforcement of the prior version of WCO, § 28-18, plaintiffs' lawsuit was not moot.

---

[10] Although theoretically the city could continually amend the ordinance in the face of new constitutional challenges, this is unlikely, and we do not believe that the capable-of-repetition exception to mootness is intended to embrace such hypothetical circumstances. We also note that plaintiffs did not seek to amend their complaint to add claims regarding the newly-amended ordinance.

[11] The same can be said in regard to the city's agreement to the dismissal of certain tickets and its actions to process the rental license applications—these actions did not undo the city's earlier actions, although they perhaps minimized the amount of potential damages. We are not prepared to conclude on the existing record that there were no damages as a matter of law. It appears to us that the dismissal of the tickets and processing of the applications were probably the result of the trial court's order on the preliminary injunction and its apparent finding that the earlier version of WCO, § 28-18, was unconstitutionally vague.

[12] We note and agree with the following remarks made by the United States Court of Appeals for the Third Circuit in *CMR D N Corp v Philadelphia*, 703 F3d 612, 622 (CA 3, 2013):

> As to the District Court's holding that the claim for damages was moot, we have stated that damages should be denied on the merits, not on grounds of mootness. Claims for damages are retrospective in nature—they compensate for past harm. By definition, then, such claims cannot be moot, and a case is saved

## C. CONTINUING JURISDICTION OF FEDERAL COURT

Plaintiffs next argue that the trial court erroneously dismissed their claims under a "broad-stroke finding" that the federal court had continuing jurisdiction over the claims. Plaintiffs maintain that had the trial court reviewed the settlement agreement, "it would have been apparent . . . that the issues and covered class were different" and that the federal court did not have jurisdiction over the claims and issues raised in the instant action. We agree.

The settlement agreement, which evidently has received final approval from the federal court, provided for the continuation of the federal court's jurisdiction over the litigation and parties with respect to any disputes or controversies regarding the administration, enforcement, implementation, or construction of the settlement agreement. The dispute or controversy over the city's rejection of plaintiffs' rental license applications under CWO, § 28-18, which formed the basis of the instant case and arose after the settlement agreement was executed, simply did not constitute a dispute or controversy regarding the administration, enforcement, implementation, or construction of the settlement agreement. The federal case, which focused on city inspections of rental properties, did not concern issues regarding information demanded by the city for purposes of processing rental license applications.[13] The trial court erred by concluding that plaintiffs' claims had to be heard and decided by the federal court under the terms of the settlement agreement. And, because different transactions gave rise to the two suits, the trial court's conclusions about improperly splitting a cause of action between federal and state courts are incorrect. See *Arnold v Masonic Country Club of Western Mich*, 268 Mich 430, 434-435; 256 NW 472 (1934) ("It is a well-settled rule that the entire claim or demand arising out of a single transaction, whether in the nature of a contract or tort, cannot be divided into separate and distinct claims, and the same form of action brought for each, or two suits maintained, without defendant's consent.") (quotation marks and citation omitted).

## D. EXHAUSTION OF ADMINISTRATIVE REMEDIES

"As this Court has repeatedly recognized, when an administrative scheme of relief exists an individual must exhaust those remedies before a circuit court has jurisdiction." *In re Harper*, 302 Mich App 349, 356; 839 NW2d 44 (2013). Although the trial court did not rely on the doctrine of exhaustion of administrative remedies when it first granted the city's motion to dismiss, it subsequently cited its principles in ruling on the motion for reconsideration. The city had relied heavily on the exhaustion of administrative remedies when responding to plaintiffs' motion for reconsideration. In ruling from the bench, the trial court told plaintiffs' attorney that there was "an administrative process that would have gotten you here," and the court subsequently stated that

---

from mootness if a viable claim for damages exists. [Quotation marks, citations, and alterations omitted.]

[13] Although arguably a closer call, we opine that plaintiffs' retaliation claims, which were premised on the theory that the rejected rental license applications were payback for the federal lawsuit, did not ultimately concern the administration, enforcement, implementation, or construction of the settlement agreement.

"[t]here was an administrative process that could have been filed." Given the court's comments, especially in light of the city's extensive argument on exhaustion of administrative remedies, we conclude that the trial court effectively invoked the doctrine. But the city's reliance on the exhaustion of administrative remedies was plainly limited to Count II in the complaint that claimed an "appeal" and that aspect of Count IV alleging a due process violation for the city's failure to provide a means or mechanism to challenge the rejection of rental license applications. On appeal, plaintiffs present no arguments whatsoever regarding the exhaustion of administrative remedies. "When an appellant fails to dispute the basis of a lower court's ruling, we need not even consider granting the relief being sought by the appellant." *Denhof v Challa*, 311 Mich App 499, 521; 876 NW2d 266 (2015). Therefore, we affirm the summary dismissal of the "appeal" claim in Count II and the due process claim embedded in Count IV regarding the purported lack of a procedure to challenge the rejection of rental license applications. All of the remaining claims, however, remain intact and legally viable.

We affirm in part and reverse and remand in part for further proceedings consistent with this opinion. We do not retain jurisdiction. No party having fully prevailed on appeal, we decline to tax costs under MCR 7.219.

/s/ Christopher M. Murray
/s/ Kathleen Jansen
/s/ Jane E. Markey

-13-