THE PEOPLE OF THE STATE OF NEW YORK ex rel. JOSEPH S. LOBENTHAL, JR., For and On Behalf of MIRCEA GOLDENBERG, Appellant, v RICHARD J. KOEHLER, as Commissioner of Correction of the City of New York, et al., Respondents. ELAINE GOLDENBERG, Intervenor.

First Department, June 12, 1987

## APPEARANCES OF COUNSEL

*Joseph S. Lobenthal, Jr.,* for appellant.

*Danny E. Greenblatt* of counsel *(Anthony C. Imbarrato* with him on the brief; *Flaum, Imbarrato & Mondello,* attorneys), for intervenor.

## OPINION OF THE COURT

ASCH, J.

We hold that the writ of habeas corpus is available to a relator who has been denied the right to counsel at a contempt hearing held pursuant to section 770 of the Judiciary Law. The right to counsel is of such transcending importance to an accused who faces the prospect of imprisonment that the failure to afford such right, apparent on the face of the record before us, must give the relator the right to habeas corpus relief. To the person who is wrongfully detained, it matters not at all whether the gate to the jail is "criminal" or "civil".

In a judgment of divorce entered in Supreme Court, Richmond County, appellant was ordered to pay $100 per week for the support of his two children and $50 per week in maintenance to his former wife. It appears no appeal was taken from that judgment and, up to the time of his commitment on or about March 12, 1987, no motion for a downward modification of the terms of the judgment had been made.

Thereafter, appellant's former wife moved, *inter alia,* to hold him in contempt for failure to make the required support payments. In its decision, the Supreme Court, Richmond County, warned appellant, who appeared without an attorney, of the serious nature of the matter. Appellant responded that he had no money to retain a lawyer. The court, without further findings in the decision concerning his ability to retain a lawyer, held appellant in contempt of court and gave him 30 days to purge himself by paying $4,350 in arrears and posting a $90,000 bond to secure future payments of child support and maintenance.

Upon appellant's failure to purge himself of contempt, an order of commitment was signed. Appellant was delivered to the Bronx House of Detention, where he remains committed. A writ of habeas corpus was issued and, after a hearing, the Bronx Supreme Court dismissed the writ.

What has distinguished the American system from the totalitarian systems has been the safeguards for personal

freedom which it has provided. Habeas corpus, "the great writ" as described by Chief Justice Marshall *(Ex Parte Boll-man,* 4 Cranch [8 US] 75, 95 [1807]), has an ancient lineage, with some scholars tracing it to Roman law *(see,* Glass, *Historical Aspects of Habeas Corpus,* 9 St John's L Rev 55). The authority for it in the Anglo-American legal system is found in the 39th clause of Magna Carta *(see,* 9 Holdsworth, History of the English Law, at 104 [1926]). The history of Magna Carta makes it clear that it was not limited in its application to criminal matters *(see,* Holdsworth, *op. cit.,* at 110, 119, 124). In any event, it was firmly embedded in English law by the 17th Century and enshrined in our Federal Constitution (art I, § 9 [2]). The "great writ", although regulated procedurally by CPLR article 70, is not a creature of statute, but a part of the common law of this State *(Matter of People ex rel. Jenkins v Kuhne,* 57 Misc 30, 40, *affd sub nom. People ex rel. Kuhne v Burr,* 127 App Div 907, *affd* 195 NY 610).

The general rule has been that habeas corpus is available for one held pursuant to a commitment for contempt, the sole questions being whether the committing court had jurisdiction and whether the form of commitment is proper. Thus, the writ of habeas corpus traditionally would not lie to review errors and irregularities other than those of jurisdiction and form.

However, the concept of "jurisdiction" has not been given a uniformly rigid application by the courts. Thus, where procedural errors in the course of a trial are so basic and fundamental as to result in a deprivation of due process, even though the court has apparent jurisdiction, such basic errors will void the jurisdiction and authorize the use of habeas corpus under certain circumstances *(People ex rel. Meers v Martin,* 4 AD2d 659, 664, *affd* 4 NY2d 898, *cert denied* 358 US 851).

In 1966, the Court of Appeals found that the "narrow view" of the grounds for habeas corpus relief, although never clearly articulated, had undergone a subtle, albeit steady, change over the years *(People ex rel. Keitt v McMann,* 18 NY2d 257, 262). It held that habeas corpus would be an appropriate way to test a claim that the relator had been imprisoned after having been deprived of a fundamental constitutional or statutory right in a criminal prosecution. The court noted, however, that:

"Departure from traditional orderly proceedings, such as

appeal, should be permitted only when dictated, as here, by reason of practicality and necessity. We emphasize that this is not a case where review of a mere error, allegedly committed at the trial, is sought. In such a case, the writ may not be utilized as a substitute for appeal or to again review the errors already passed on in an earlier appeal.

"Therefore, since relator is complaining that he is being incarcerated pursuant to a judgment of conviction which contains a deprivation of a substantial constitutional right on the face of the record, and since, if the claim is substantiated, his imprisonment would be illegal, we hold that habeas corpus is the proper remedy in these circumstances." *(Supra,* at 262-263.)

Although the Court of Appeals articulated the liberalization of the traditional use of habeas corpus which the writ had gradually undergone in a criminal case, its basic rationale, i.e., allowing relator to test a claim of imprisonment after deprivation of a fundamental constitutional or statutory right apparent on the face of the record, applies equally in cases involving a finding of civil contempt where the relator has been committed in violation of a substantial constitutional right apparent on the face of the record. This is simply a straightforward and necessary extension of the principles enunciated in *People ex rel. Keitt* which makes "increasing use of 'one of the hallmarks of the writ * * * its great flexibility and vague scope' " *(supra,* at 263).

With the exception of a narrowly limited category of contempts, where the contemptuous conduct is committed in open court, in the presence of the Judge, and immediate punishment is necessary to uphold the court's authority, due process pursuant to the Fifth and Fourteenth Amendments demands that a person charged with contempt "be advised of the charges against him, have a reasonable opportunity to meet them by way of defense or explanation, *have the right to be represented by counsel,* and have a chance to testify and call other witnesses in his behalf, either by way of defense or explanation" *(In re Oliver,* 333 US 257, 275; emphasis added).

Section 770 of the Judiciary Law directs that, upon the return of an application to punish for contempt, the court inform the offender that he or she has the right to the assistance of counsel, and "when it appears that the offender is financially unable to obtain counsel, the court may in its discretion assign counsel to represent him or her." Although

not phrased in a mandatory manner, this section has been interpreted, however, to require the court to make an assignment once indigency is found, thereby retaining the power to punish the offender with a term of imprisonment upon assigning counsel, or surrendering that power by proceeding without assignment of counsel (*Holmes v Holmes*, 89 AD2d 921). Thus, an indigent offender's "interest in personal freedom, and not simply the special Sixth and Fourteenth Amendments right to counsel in criminal cases * * * triggers the right to appointed counsel" (*Lassiter v Department of Social Servs.*, 452 US 18, 25).

The Federal Court of Appeals for the Second Circuit, in a civil contempt proceeding against a recalcitrant Grand Jury witness, observed that although the purpose of the contempt was to coerce the witness to answer questions, not to punish him, the burden of imprisonment was just as great, necessitating procedural protection (*Matter of Di Bella*, 518 F2d 955, 959). It concluded that the right to counsel "must be extended to a contempt proceeding, be it civil or criminal, where the defendant is faced with the prospect of imprisonment" (*Matter of Di Bella, supra,* at 959).

The Third Department has held that one subject to possible contempt and imprisonment has an absolute right to counsel, and if the contemnor appears *pro se*, he is entitled to be advised that he has the right to counsel and, if indigent, to assigned counsel (*Hickland v Hickland*, 56 AD2d 978, 980).

The Second Department found Family Court to have erred when, after inquiring of appellant whether he needed an attorney and having received an affirmative response, it ignored his request for counsel and entered an order which contained the possibility of incarceration, without affording appellant the opportunity to obtain an attorney or have one assigned (*Matter of Williams v Williams*, 91 AD2d 1044; *see also, Matter of Brainard v Brainard*, 88 AD2d 996 [2d Dept]; *Matter of Kissel v Kissel*, 59 AD2d 1036 [4th Dept]).

At the hearing where relator herein was adjudged guilty of contempt for a willful and contumacious refusal to comply with the prior court order fixing his child support and spousal maintenance obligations, he had an absolute right to counsel since he was subject to possible imprisonment (*Lassiter v Department of Social Servs., supra; Argersinger v Hamlin*, 407 US 25, 37).

Although the court at the contempt hearing, by finding appellant in contempt of the prior order, necessarily found that he was not so indigent as to be unable to comply with the terms of that order, the decision of the court does not disclose if that court attempted to ascertain whether appellant had sufficient resources to retain private counsel *(Holmes v Holmes, supra)*. Although appellant's failure to appeal the order finding him in contempt is the cause of the record being unavailable to us, appellant was apparently unrepresented by counsel at that time. Practicality and necessity dictate, therefore, departure from the traditional, orderly proceedings *(People ex rel. Keitt v McMann, supra,* at 262). Since the record of that proceeding is not before us, we remand for a new contempt hearing where the issue of his indigency can be addressed.

Obviously, the fact that appellant has been able to retain counsel to represent him since his commitment, and on this appeal, will have a significant bearing on any claim of indigency at the hearing, although such representation, standing alone, does not require a finding at this time that appellant has sufficient funds to rctain private counsel. We are unaware of the financial arrangement appellant has with his present counsel or of any possible assistance he has received from family or friends. These facts can, of course, be explored at the hearing.

Accordingly, the judgment of the Supreme Court, Bronx County (Hansel McGee, J.), entered March 25, 1987, which dismissed the petition pursuant to CPLR article 70 seeking a writ of habeas corpus, should be reversed, on the law, and the petition granted to the extent of directing the release of appellant and remanding for a new hearing, without costs or disbursements.

CARRO, J. P., ROSENBERGER, ELLERIN and WALLACH, JJ., concur.

Judgment, Supreme Court, Bronx County, entered on March 25, 1987, unanimously reversed, on the law, and the petition granted to the extent of directing the release of appellant and remanding for a new hearing, without costs and without disbursements.