MEAD v BATCHLOR

Docket No. 81950. Argued October 5, 1989 (Calendar No. 6). Decided
August 28, 1990.

Marvetta Mead and William Batchlor were granted a divorce in
the Cass Circuit Court. At that time, the court, James E. Hoff,
J., ordered the defendant to pay child support. After the
defendant ceased to pay child support, the Cass County Friend
of the Court petitioned the court on the plaintiff's behalf for an
order requiring the defendant to show cause why he should not
be held in contempt for failure to comply with the child
support order. The defendant asserted indigency and requested
that counsel be appointed to represent him. The court, Michael
E. Dodge, J., denied the request, and the defendant appeared
without counsel. Following a hearing, he was held in contempt
for failure to pay support and was placed on probation and
informed that failure to comply would result in his arrest and
incarceration. After the defendant appealed in the Court of
Appeals, but before decision by that Court, upon motion by the
Friend of the Court, the circuit court entered an order abating
child support payments until such time as the defendant ob-
tained employment. The Court of Appeals, SAWYER, P.J., and
SULLIVAN and E. M. THOMAS, JJ., thereafter affirmed in an
unpublished opinion per curiam, holding that inasmuch as the
defendant was no longer under the threat of incarceration, it
was not appropriate to address the question whether he was
entitled to court-appointed counsel at the contempt proceeding
(Docket No. 98177). The defendant appeals.

In a unanimous opinion by Justice GRIFFIN, the Supreme
Court held:

The Due Process Clause of the Fourteenth Amendment pre-
cludes incarceration of an indigent defendant in a contempt
proceeding for nonpayment of child support if the indigent has
been denied the assistance of counsel.

1. In this case, even though the court has temporarily abated

REFERENCES

Am Jur 2d, Divorce and Separation §§ 1067, 1072.
Pleading and burden of proof, in contempt proceedings, as to ability
to comply with order for payment of alimony or child support. 53
ALR2d 591.

the defendant's obligation to make support payments, the finding of contempt has not been rescinded, and he faces possible adverse consequences. Where a court's judgment adverse to a defendant may have collateral legal consequences, the issue is not necessarily moot unless it is shown that there is no possibility of any collateral legal consequences. A court may decide a moot case or determine a moot question where it appears to be in the public interest, as guidance for future cases.

2. The Sixth Amendment guarantee of counsel in criminal prosecutions is applicable to the states through the Due Process Clause of the Fourteenth Amendment in all state felony trials and to indigents who could be incarcerated for petty or misdemeanor offenses. Even though an indigent in a civil nonsupport proceeding is not entitled to the full panoply of process due a criminal defendant, it does not follow that incarceration may be imposed without the benefit of counsel simply because the proceeding is considered civil in nature. It is the indigent's fundamental interest in physical liberty and not the civil or criminal nature of a proceeding that gives rise to the due process right to appointed counsel.

3. *Sword v Sword,* 399 Mich 367 (1976), concluded that there was no right per se to appointed counsel in a proceeding regarding nonpayment of child support. However, subsequent changes in the statutes governing enforcement of child support obligations and the adoption of the presumption that every defendant in such a proceeding has the ability to pay four weeks of child support have raised significantly the risk of error with respect to indigents which could result in the deprivation of physical liberty. An indigent may be unaware of the statutory presumption and is likely not to be knowledgeable concerning the variety and sufficiency of evidence required to surmount the presumption, leading the court to consider unnecessary an independent determination of the defendant's present ability to comply with the order to pay. At least when faced with the loss of physical liberty, an indigent needs an attorney to advise concerning the meaning and requirements of applicable laws and to raise proofs and defenses. While appointment of counsel is not required in all proceedings regarding nonpayment of child support, an indigent defendant may not be incarcerated where counsel was denied in a contempt proceeding for nonsupport.

4. In any contempt proceeding for nonsupport, the court should assess the likelihood that the defendant may be incarcerated, particularly in light of MCL 552.637; MSA 25.164(37)

which requires the use of other remedies to the extent possible. Whenever incarceration is proposed for nonsupport, a stenographic record should be made and there should be careful inquiry, focusing on the defendant's present ability to pay. Before the defendant may be incarcerated there should be findings supported by substantial evidence of an ability to perform the condition alternate to the proposed order of confinement. If the defendant claims indigency and the court wishes to reserve the discretionary power to incarcerate the defendant, the inquiry should focus on whether the defendant is indigent guided by present employment, earning capacity, and living expenses; outstanding debts and liabilities; qualification for and receipt of public assistance; availability and convertibility of owned personal and real property; and any other circumstances which would impair the ability to pay attorney fees. If the court determines that the defendant is indigent and the court wishes to reserve the power to incarcerate the defendant, the court must appoint an attorney to represent the defendant unless the right to an attorney is waived.

Reversed and remanded.

399 Mich 367 (1976) overruled in part.

1. DIVORCE — CHILD SUPPORT — INDIGENTS — INCARCERATION.

An indigent defendant may not be incarcerated following a contempt proceeding for failure to pay child support where the assistance of counsel has been denied (US Const, Ams VI, XIV).

2. DIVORCE — CHILD SUPPORT — INDIGENTS — INCARCERATION.

In any contempt proceeding for nonsupport, where incarceration is proposed for nonsupport, a stenographic record should be made and there should be careful inquiry focusing on the defendant's present ability to pay and findings supported by substantial evidence of an ability to perform the condition alternate to the proposed order of confinement, guided by present employment, earning capacity, and living expenses; outstanding debts and liabilities; qualification for and receipt of public assistance; availability and convertibility of owned personal and real property; and any other circumstances which would impair the ability to pay attorney fees, if the court determines that the defendant is indigent, and the court wishes to reserve the power to incarcerate the defendant, the court must appoint an attorney to represent the defendant unless the right to an attorney is waived (MCL 552.637; MSA 25.164[37]).

*David Hunt* for the defendant.

*Frank J. Kelley,* Attorney General, *Louis J.*

*Caruso,* Solicitor General, and *Christine A. Derdarian,* Assistant Attorney General, for the people.

Amici Curiae:

*Paul J. Denenfeld* and *Paul C. Pratt* for the ACLU Fund of Michigan.

*Shirley J. Burgoyne* for the Family Law Section of the State Bar of Michigan.

*Roland C. Fancher* for the Friend of the Court.

*Gordon M. Bloem* for Legal Aid of Western Michigan.

*Dennis O. Cawthorne* for Michigan Association of Counties.

*Susan K. McParland* (*David L. Chambers,* of counsel), for Michigan Legal Services.

GRIFFIN, J. This appeal raises again the question whether an indigent defendant is constitutionally entitled to the assistance of counsel in a contempt proceeding for failure to pay child support. In *Sword v Sword,* 399 Mich 367; 249 NW2d 88 (1976), this Court concluded that in such a civil proceeding there is no right per se to appointed counsel. In light of more recent developments in due process jurisprudence and changes in Michigan statutes governing child support enforcement, we now are persuaded that our holding in *Sword* must be modified to recognize that the Due Process Clause of the Fourteenth Amendment of the United States Constitution precludes incarceration of an indigent defendant if he has been denied counsel in a contempt proceeding for failure to pay child support.

I

Plaintiff Marvetta Mead and defendant William Batchlor were divorced April 23, 1976, and the Cass Circuit Court ordered defendant to pay $30 a week as support for his two children.[1] Defendant complied with the order until sometime in 1980.

On January 27, 1981, the court entered an order which had the effect of assigning $35 per week from defendant's earnings for child support.[2] The assignment was effective until July 1985 when defendant was laid off. He continued for a while to make support payments out of his unemployment compensation. However, when his unemployment benefits expired and he did not find another job, defendant and his present wife applied for welfare (general assistance benefits). After June 1986, he and his wife received only welfare in the amount of $235 per month, and defendant paid no child support.

On December 2, 1986, the Cass County Friend of the Court[3] petitioned on plaintiff's behalf for an order requiring defendant to show cause why he should not be held in contempt for failure to comply with the court's child support order. Responding in writing in propria persona, defendant asserted indigency and requested that counsel be appointed to represent him. The court denied the

[1] One child was born on July 22, 1968, and the other on October 16, 1970. At the time defendant filed for leave to appeal to this Court, the children were ages eighteen and sixteen.

[2] The order recites that it was entered pursuant to 1964 PA 175, § 3. At that time defendant was employed at Sundstrand, Inc., a manufacturing firm in Cass County. The sum of $5 a week was added to the previously ordered weekly rate of $30 as a means of paying off an accumulated arrearage.

[3] One of the duties of the Friend of the Court is to "establish a system for initiating enforcement of support orders without awaiting complaints from the recipient of support." MCL 552.511; MSA 25.176(11).

request without a hearing on January 8, 1987. A few days later, on January 12, 1987, the court conducted a show cause hearing, and defendant appeared without counsel. The court questioned defendant about his employment status and receipt of welfare; however, no determination was made concerning defendant's claim of indigency or his ability to pay the ordered child support. Nevertheless, the court entered an order holding defendant in contempt for "[f]ailure to pay out of currently available resources all or some portion of the amount due,"[4] and directed defendant to pay $30 a week for support and an additional $10 a week to be applied against the arrearage. The order further provided:

> Defendant is placed on two year's probation and ordered to pay as stated above. Failure to comply, [sic] a Bench Warrant shall issue and Defendant

---

[4] The written order quoted part of MCL 552.633; MSA 25.164(33), which provides:

> The court may find a payer in contempt if the court finds that the payer is in arrears and if the court is satisfied that the payer has the capacity to pay out of currently available resources all or some portion of the amount due under the support order. In the absence of proofs to the contrary introduced by the payer, the court shall presume that the payer has currently available resources equal to 4 weeks of payments under the support order. The court shall not find that the payer has currently available resources of more than 4 weeks of payments without proof of such resources by the office of the friend of the court or the recipient of support. Upon finding a payer in contempt of court under this section, the court may immediately enter 1 of the following orders:
>
> (a) Committing the payer to the county jail.
>
> (b) Committing the payer to the county jail with the privilege of leaving the jail, during such hours as the court determines and under such supervision as the court considers necessary, for the purpose of allowing the payer to go to and return from his or her place of employment.
>
> (c) Committing the payer to any penal or correctional facility in this state which is not operated by the state department of corrections. [1982 PA 295, § 33, effective July 1, 1983.]

shall be arrested and confined to jail for 40 days. He [may] be released on payment of $400.00.

In the Court of Appeals defendant claimed that the circuit court erred by denying his request for appointed counsel. Two weeks after defendant filed his appeal, the circuit court, upon motion of the Friend of the Court, entered an order reciting that "the child support shall abate . . . until such time as the Defendant obtains employment or obtains other income."

Thereafter, in a brief per curiam opinion, the Court of Appeals affirmed, stating:

> Inasmuch as defendant is no longer under the threat of incarceration, we do not believe it appropriate for this Court to address the question of whether defendant was entitled to court-appointed counsel at the contempt proceeding.[5]

We granted leave to appeal. 430 Mich 890 (1988).

II

Although the facts of this case suggest that the question may be moot, we decline to follow the route taken by the Court of Appeals. Where a court's adverse judgment may have collateral legal consequences for a defendant, the issue is not necessarily moot. In *Sibron v New York,* 392 US 40; 88 S Ct 1889; 20 L Ed 2d 917 (1968), the United States Supreme Court considered whether the challenge to a criminal conviction was moot where the defendant had already served the imposed sentence. The Court stated that such a challenge is moot "only if it is shown that there is no possibility that any collateral legal consequences will be

---

[5] Unpublished opinion per curiam of the Court of Appeals, decided October 12, 1987 (Docket No. 98177).

imposed on the basis of the challenged conviction." 392 US 57.[6]

In this case, defendant faces possible adverse consequences even though the circuit court has temporarily abated defendant's obligation to make support payments. The finding of contempt has not been rescinded, and the circuit court, at any time,[7] could reinstate its order directing defendant to pay support.[8]

Even if it might be said that the contempt order is no longer valid, defendant faces the possibility of future contempt proceedings. A disposition based on mootness is not required where the underlying conduct is capable of repetition, yet evades review.[9]

Finally, we have granted leave to appeal because the issue raised in this case is of sufficient public importance that a decision on the merits is warranted:

> [T]he refusal of a court to decide a moot case or to determine a moot question is not based on lack of jurisdiction to do so . . . a court will decide a moot case or determine a moot question where this appears to be in the public interest, as for guidance in future cases. [20 Am Jur 2d, Courts, § 81, p 443.]

[6] See also *Carafas v LaVallee,* 391 US 234, 237; 88 S Ct 1556; 20 L Ed 2d 554 (1968).

[7] See MCL 552.28; MSA 25.106, also *York v York,* 113 Mich App 306; 317 NW2d 604 (1982).

[8] Moreover, the state could take into account a contempt finding in fixing child visitation rights or in imposing a more severe sanction if defendant were found to be in contempt in the future. See *Walker v McLain,* 768 F2d 1181 (CA 10, 1985), cert den 474 US 1061 (1986); *Ridgeway v Baker,* 720 F2d 1409 (CA 5, 1983).

[9] *Roe v Wade,* 410 US 113; 93 S Ct 705; 35 L Ed 2d 147 (1973); *Civil Rights Dep't ex rel Forton v Waterford Twp Dep't of Parks & Recreation,* 425 Mich 173, 176-177; 387 NW2d 821 (1986); *In re Midland Publishing Co, Inc,* 420 Mich 148, 152; 362 NW2d 580 (1984); *In re Wayne Election Comm,* 150 Mich App 427, 432; 388 NW2d 707 (1986).

This is not the first time that we have recognized the public-interest exception to the mootness doctrine. See, e.g., *Civil Rights Dep't ex rel Forton v Waterford Twp Dep't of Parks & Recreation,* 425 Mich 173; 387 NW2d 821 (1986); *Lafayette Dramatic Production v Ferentz,* 305 Mich 193; 9 NW2d 57 (1943).[10]

### III

We turn now to the question whether an indigent defendant in a contempt proceeding for failure to pay child support is constitutionally entitled to appointed counsel before he can be incarcerated.

It is noted initially that the right to counsel, at public expense if necessary, is well established with respect to proceedings that are criminal in nature. The Sixth Amendment's guarantee of counsel in criminal prosecutions has been applicable, through the Due Process Clause of the Fourteenth Amendment of the federal constitution, in all state felony trials since *Gideon v Wainwright,* 372 US 335; 83 S Ct 792; 9 L Ed 2d 799 (1963), and to indigents who, if they lose, could be incarcerated for petty or misdemeanor offenses since *Argersinger v Hamlin,* 407 US 25; 92 S Ct 2006; 32 L Ed 2d 530 (1972).

When this Court decided *Sword, supra,* we focused upon the civil nature of such a hearing—the fact that it is not a criminal proceeding. The *Sword* ruling also rested on an assessment that a contempt proceeding for nonsupport was not complex.

A number of decisions by the United States Supreme Court and federal courts of appeal issued

---

[10] See also *Ferency v Secretary of State,* 139 Mich App 677; 362 NW2d 743 (1984); *In re Marriage of Stariha,* 509 NE2d 1117 (Ind App, 1987).

after *Sword* prompt us to reëxamine the significance of incarceration as a factor in determining whether and when the Due Process Clause of the Fourteenth Amendment requires that counsel be appointed for an indigent in such a civil proceeding. Moreover, in the light of significant changes since *Sword* in this state's statutes governing child support enforcement, we believe a new assessment concerning the complexity of such a proceeding is required.

## A

"For all its consequence, 'due process' has never been, and perhaps can never be, precisely defined. . . . [T]he phrase expresses the requirement of 'fundamental fairness,' a requirement whose meaning can be as opaque as its importance is lofty." *Lassiter v Durham Co, North Carolina, Dep't of Social Services,* 452 US 18, 24; 101 S Ct 2153; 68 L Ed 2d 640 (1981). Although application of the Due Process Clause is an "uncertain enterprise," the Supreme Court has counseled that its meaning in a particular case is discovered "by first considering any relevant precedents and then by assessing the several interests that are at stake." *Id.* at 25.

As we read the precedents, even though an indigent defendant in a civil nonsupport proceeding is not entitled to the full panoply of process due a criminal defendant, it does not follow that he can be incarcerated without having had the benefit of counsel simply because the proceeding is considered to be civil in nature.

In *Argersinger, supra,* the Supreme Court held that absent a knowing and intelligent waiver, a defendant may not be imprisoned, no matter how petty the criminal offense, unless represented by

counsel at trial. The rationale supporting such a rule turned on the deprivation of physical liberty by incarceration, even if it were for only a brief period. 407 US 32-33, 41 (Burger, C.J., concurring).

The defendant in *Scott v Illinois,* 440 US 367, 373; 99 S Ct 1158; 59 L Ed 2d 383 (1979), was fined $50 for shoplifting, but he was not incarcerated. He claimed nevertheless that he was entitled to appointed counsel because the Sixth Amendment provides that "[i]n *all* criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." (Emphasis added.) In denying the claim, the Supreme Court de-emphasized the nature of the proceeding and focused instead on actual imprisonment as the dividing line:

> [W]e believe that the central premise of *Arger-singer*—that actual imprisonment is a penalty different in kind from fines or the mere threat of imprisonment—is eminently sound and warrants adoption of actual imprisonment as the line defining the constitutional right to appointment of counsel. [440 US 373.]

On several occasions the Supreme Court has found in civil cases that the Due Process Clause requires the appointment of counsel. As in the criminal context, the Court's focus in these cases has been not on the civil or criminal nature of the proceeding, but rather on whether the proceeding results in deprivation of the defendant's physical liberty.

In *In re Gault,* 387 US 1; 87 S Ct 1248; 18 L Ed 2d 527 (1967), a juvenile was committed as a delinquent to a state facility for the period of his minority. Under the state's laws, the proceeding was considered to be civil in nature. The Supreme Court held that the Due Process Clause of the

Fourteenth Amendment required the appointment of counsel despite the fact that the proceedings were styled "civil" and not "criminal." The Court reasoned:

> A proceeding where the issue is whether the child will be found to be "delinquent" and subjected to the loss of his liberty for years is comparable in seriousness to a felony prosecution. The juvenile needs the assistance of counsel to cope with problems of law, to make skilled inquiry into the facts, to insist upon regularity of the proceedings, and to ascertain whether he has a defense and to prepare and submit it. The child "requires the guiding hand of counsel at every step in the proceedings against him." [*Id.* at 36.][11]

The Court's preeminent focus on a defendant's liberty interest was also evident in *Gagnon v Scarpelli,* 411 US 778; 93 S Ct 1756; 36 L Ed 2d 656 (1973). There the Court determined that "as a litigant's interest in personal liberty diminishes, so does his right to appointed counsel." *Lassiter,* 452 US 26. The *Gagnon* Court concluded that a probationer, who retains only a conditional liberty interest, does not have a right per se to appointed counsel in a probation revocation hearing. A similar result was reached in *Morrissey v Brewer,* 408 US 471; 92 S Ct 2593; 33 L Ed 2d 484 (1972), where parole revocation was involved. The Court said, "[r]evocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions."

In *Lassiter,* the Supreme Court considered the

---

[11] See also *Vitek v Jones,* 445 US 480; 100 S Ct 1254; 63 L Ed 2d 552 (1980) (an indigent prisoner is entitled to counsel before he can be involuntarily transferred to a mental hospital).

denial of appointed counsel for a woman whose parental rights were terminated in a North Carolina civil proceeding. In the course of affirming the state's decision, the Court provided highly significant guideposts for due process determination which must be considered in the context of this case.

The *Lassiter* Court stated, "[t]he pre-eminent generalization that emerges from [the] Court's precedents on an indigent's right to appointed counsel is that such a right has been recognized to exist only where the indigent may lose his physical liberty if he loses the litigation." 452 US 25.

Citing *In re Gault,* the *Lassiter* Court emphasized that "it is the defendant's interest in personal freedom, and not simply the special Sixth and Fourteenth Amendments right to counsel in criminal cases, which triggers the right to appointed counsel . . . ." *Id.* Then, after summarizing its precedents on the right to counsel, the *Lassiter* Court stated:

> In sum, the Court's precedents speak with one voice about what "fundamental fairness" has meant when the Court has considered the right to appointed counsel, and *we thus draw from them the presumption that an indigent litigant has a right to appointed counsel only when, if he loses, he may be deprived of his physical liberty.* It is against this presumption that all the other elements in the due process decision must be measured. [452 US 26-27. Emphasis added.]

By its reference to the "other elements in the due process decision" the Court focused upon the three factors propounded for evaluation in *Mathews v Eldridge,* 424 US 319; 96 S Ct 893; 47 L Ed 2d 18 (1976), viz: "the private interests at stake, the government's interest, and the risk that the

procedures used will lead to erroneous decisions." The *Lassiter* Court proceeded to "balance these elements against each other, and then set their net weight in the scales against the presumption that there is a right to appointed counsel only where the indigent, if he is unsuccessful, may lose his personal freedom." 452 US 27.

Since the Court concluded that the appointment of counsel was not required on the facts in *Lassiter*, it has been suggested that much of its analysis is dicta.[12] However, it is difficult to ignore the guideposts and formula for due process decision which were set forth, as well as the clear indication that if the indigent's liberty interest had been at stake in *Lassiter*, she would have been entitled to appointed counsel.[13]

### B

While not bound, we are influenced, of course, by decisions of the United States Courts of Appeals, particularly on a point of federal constitu-

[12] See e.g., *Young v Whitworth*, 522 F Supp 759, 764 (SD Ohio, 1981).

[13] Amicus curiae have pointed to the recent decision in *Hicks v Feiock*, 485 US 624; 108 S Ct 1423; 99 L Ed 2d 721 (1988), as support for the argument that the right to counsel is controlled by the nature of the proceeding. The *Hicks* Court did remand the case for a determination of whether a nonsupport proceeding under California law is civil or criminal. However, the right to counsel was not at issue. Rather, the *Hicks* Court was concerned with the validity of a statutory presumption and its relation to the appropriate standard of proof in such a proceeding. While a statutory presumption may be valid and applicable in a civil proceeding, *Hicks* underscores that such a presumption cannot be substituted for proof beyond a reasonable doubt in a criminal case.

Courts traditionally have looked to whether the proceeding is civil or criminal in determining whether criminal procedural rights (e.g., proof beyond a reasonable doubt) are due a particular defendant. However, as this Court noted in *Bowerman v McDonald*, 431 Mich 1, 13; 427 NW2d 477 (1988), the right of an indigent to counsel is a "particular and clearly demarcated right" separate from the full panoply of criminal procedural rights.

tional law with regard to which the United States Supreme Court has not ruled directly. Our review indicates that every federal circuit court of appeals confronting the issue now before us has concluded that the Due Process Clause of the Fourteenth Amendment at least requires that an indigent defendant in a nonsupport proceeding may not be incarcerated if he has been denied the assistance of counsel. *Sevier v Turner,* 742 F2d 262 (CA 6, 1984) (en banc); *Walker v McLain,* 768 F2d 1181 (CA 10, 1985); *Ridgeway v Baker,* 720 F2d 1409 (CA 5, 1983); *Henkel v Bradshaw,* 483 F2d 1386 (CA 9, 1973) (in dicta). See also *Nordgren v Mitchell,* 716 F2d 1335 (CA 10, 1983) (a paternity action).[14]

We note also that the federal district courts uniformly have reached a similar result. *McKinstry v Genesee Co Circuit Judges,* 669 F Supp 801 (ED Mich, 1987); *Johnson v Zurz,* 596 F Supp 39 (ND Ohio, 1984); *Lake v Speziale,* 580 F Supp 1318 (D Conn, 1984); *Young v Whitworth,* 522 F Supp 759 (SD Ohio, 1981); *Mastin v Fellerhoff,* 526 F Supp 969 (SD Ohio, 1981). See also *Cobb v Green,* 574 F Supp 256 (WD Mich, 1983), vacated on grounds of abstention, 611 F Supp 873 (WD Mich, 1985).

The analysis provided by the United States Court of Appeals for the Tenth Circuit, which

---

[14] The issue was not before the United States Court of Appeals for the Seventh Circuit in *Mann v Hendrian,* 871 F2d 51 (CA 7, 1989), wherein it was decided that the plaintiff in a 42 USC 1983 suit did not have standing to seek an order requiring the defendant state judge to advise the plaintiff of a right to counsel in future contempt proceedings which might be brought against the plaintiff for failure to pay child support. In the underlying contempt proceeding, the plaintiff was jailed for sixty days by an order which contained no purge clause, and for that reason the court of appeals recognized that the proceeding was criminal in nature, not civil. Although in obiter dicta the court expressed some disagreement with reasoning set forth in *Walker v McLain,* we do not read its *Mann* decision as being inconsistent with our holding today.

focuses on the significance of incarceration in such a determination, is generally representative of the reasoning adopted by most of the federal courts:

> It would be absurd to distinguish criminal and civil incarceration; from the perspective of the person incarcerated, the jail is just as bleak no matter which label is used. In addition, the line between criminal and civil contempt is a fine one, and is rarely as clear as the state would have us believe.[15] The right to counsel, as an aspect of due process, turns not on whether a proceeding may be characterized as "criminal" or "civil," but on whether the proceeding may result in a deprivation of liberty. [*Walker v McLain,* 768 F2d 1183. Citations omitted.]

Likewise, a large majority of the state courts which have confronted the issue have determined that, absent a valid waiver, an indigent defendant

---

[15] As the United States Supreme Court stated,

> The critical feature that determines whether the remedy is civil or criminal in nature is . . . whether the contemnor can avoid the sentence imposed on him, or purge himself of it, by complying with the terms of the original order. [*Hicks,* n 13 *supra* at 635, n 7.]

Clearly, it was intended that the Michigan statutory procedure authorizing incarceration for child nonsupport should be regarded as civil in nature. The statute refers to the action as "a *civil* contempt proceeding." MCL 552.631; MSA 25.164(31) (emphasis added). Moreover, under *Hicks,* n 13 *supra,* the statutory presumption in MCL 552.633; MSA 25.164(33) that a defendant has currently available resources equal to four weeks of payment under the support order could not be applied except in a civil proceeding. However, as Justice LEVIN cautioned in *Sword,* such a proceeding may be criminal in nature if the defendant in fact does not have the present ability to comply:

> If the defendant does not have the present ability to pay, then he does not have the "keys to the jail"; what is nominally a civil contempt proceeding is in fact a criminal contempt proceeding—the defendant is not being coerced, but punished. [399 Mich 393.]

is entitled to counsel in such a proceeding before he can be incarcerated. The rationale expressed by the Maryland Supreme Court in *Rutherford v Rutherford,* 296 Md 347, 360-361; 464 A2d 228 (1983), is typical:

> A defendant's actual incarceration in a jail, as a result of a proceeding at which he was unrepresented by counsel and did not knowingly and intelligently waive the right to counsel, is fundamentally unfair. As repeatedly pointed out in criminal and civil cases, it is the fact of incarceration, and not the label placed upon the proceeding, which requires the appointment of counsel for indigents.

Accord *Padilla v Padilla,* 645 P2d 1327 (Colo App, 1982); *Dube v Lopes,* 40 Conn 111; 481 A2d 1293 (1984); *McNabb v Osmundson,* 315 NW2d 9 (Iowa, 1982); *In re Marriage of Stariha,* 509 NE2d 1117 (Ind App, 1987); *Cox v Slama,* 355 NW2d 401 (Minn, 1984); *Hunt v Moreland,* 697 SW2d 326 (Mo App, 1985); *New York v Lobenthal,* 129 AD2d 28; 518 NYS2d 928 (1987).[16]

---

[16] Other states have also required appointed counsel in civil cases when an individual is going to be incarcerated for various other reasons: *Otton v Zaborac,* 525 P2d 537 (Alas, 1974) (the threat of incarceration and the right to a jury trial in contempt proceedings suggests that indigents should receive appointed counsel); *Ventura Co v Tillett,* 133 Cal App 3d 105; 183 Cal Rptr 741 (1982), cert den 460 US 1051 (1983) (the disparity of bargaining power between indigent defendants and the state and the defendant's potential loss of liberty require appointed counsel); *Bowen v Bowen,* 471 So 2d 1274 (Fla, 1985) (criminal contempt proceedings require appointed counsel for indigents; in civil contempt proceedings defendants must have the present ability to purge the contempt or they cannot be incarcerated); *Johnson v Johnson,* 11 Kan App 317; 721 P2d 290 (1986) (*Mathews* factors were relied upon to determine that appointed counsel is required); *State v St Pierre,* 515 So 2d 769 (La, 1987); *State v Broussard,* 490 So 2d 273 (La, 1986) (the contempt procedure for enforcing support obligations is essentially criminal in nature and therefore requires appointed counsel); *Gordon v Bowden,* 553 A2d 665 (Me, 1989) (no opportunity to purge a contempt sentence violates substantive due process); *Carroll v Moore,* 288 Neb 561, 571; 423

C

Although the Michigan experience with respect to an indigent's right to counsel in civil cases has been limited, it is noteworthy that this Court has recognized such a right in other contexts. In *Artibee v Cheboygan Circuit Judge,* 397 Mich 54; 243 NW2d 248 (1976), a case decided prior to *Sword,* we ruled that an indigent defendant in a paternity action is entitled to appointed counsel, even though the proceeding is civil in nature. Describing such an action as "quasi-criminal," we stated that "[t]he interests of the individuals affected are substantial, and the nature of the proceedings is sufficiently complex so as to require counsel to insure a fair trial." *Id.* at 57.

Three years after *Sword,* this Court was confronted with the question whether an indigent defendant is entitled to appointed counsel in a civil contempt proceeding for refusing to testify before a grand jury. In *People v David Johnson,* 407 Mich 134, 148; 283 NW2d 632 (1979), we

NW2d 757 (1988), cert den 488 US 1019; 109 S Ct 817; 102 L Ed 2d 807 (1989) ("[T]he right of an indigent to court-appointed counsel may be found in either a civil or criminal context. If a State's paternity process could directly lead to incarceration, *Lassiter* would provide an absolute right to appointed counsel."); *Wake Co v Townes,* 306 NC 333; 293 SE2d 95 (1982) (*Lassiter* presumption adopted in paternity actions); *In re Gorger,* 82 Or App 417; 728 P2d 104 (1986) (Or Rev Stat 33.095 requires the appointment of counsel in child nonsupport civil contempt proceedings); *Commonwealth ex rel Brown v Hendrick,* 220 Pa 225; 283 A2d 722 (1971) (reversed a civil contempt conviction for failure to make support payments where the contemnor did not have counsel and the present ability to comply was not demonstrated); *Ex parte Gunther,* 758 SW2d 226 (Tex, 1988) (Texas required counsel to be appointed in child support and paternity hearings, see Texas Family Code Annotated, § 14.32[F]); *Tetro v Tetro,* 86 Wash 2d 252; 544 P2d 17 (1975) (reliance on *Argersinger* to require appointed counsel when incarceration is possible); *Ferris v Maass,* 75 Wis 2d 542; 249 NW2d 789 (1977).

A few state courts, in addition to Michigan, have ruled to the contrary. See *Sheedy v Merrimack Co Superior Court,* 128 NH 51; 509 A2d 144 (1986); *New Mexico v Rael,* 97 NM 640; 642 P2d 1099 (1982); *Jolly v Wright,* 300 NC 83; 265 SE2d 135 (1980).

concluded that the appointment of counsel was required "pursuant to the Due Process Clause, for an indigent witness in [civil] contempt proceedings which may result in incarceration." In both *Artibee* and *David Johnson,* this Court focused primarily on the deprivation of liberty and the complexity of the proceeding, rather than on the civil or criminal nature of the proceeding.

To the extent that *Sword* turned on the civil-criminal dichotomy, it might now be regarded as an anomaly. Upon the basis of our review of the federal and state precedents, we find it well established that the due process right to appointed counsel is triggered by an indigent's fundamental interest in physical liberty, and not by the civil or criminal nature of the proceeding.

IV

Although the *Sword* opinion does not refer to *Mathews v Eldridge, supra,* it appears that its principles were considered and applied. With a view toward weighing them anew, we look again at the *Eldridge* factors[17] as they apply in a nonsupport contempt proceeding wherein the defendant claims indigency and faces the prospect of incarceration.

It is axiomatic that the liberty interest of every citizen—the right to personal, physical freedom—is of paramount importance under the constitution. As the United States Supreme Court has observed, "[T]he prospect of imprisonment for however short a time will seldom be viewed by the accused as a trivial or 'petty' matter and may well result in

[17] As identified in *Lassiter, supra* at 27, the *Eldridge* factors are: "[1] the private interests at stake, [2] the government's interest, and [3] the risk that procedures used will lead to erroneous decisions."

quite serious repercussions affecting his career and his reputation."[18]

From time to time it is suggested that the defendant in a civil nonsupport contempt proceeding has only a conditional liberty interest, akin perhaps to the probationer or parolee in *Gagnon* and *Morrissey*. The argument goes that because the civil contempt order contains a purge clause, the contemnor holds "the keys to the jailhouse door . . . ." The faulty reasoning behind such an argument, as it applies to an indigent, was well explained in *Walker v McLain, supra* at 1184:

> It is true that the defendant's right to appointed counsel diminishes as his interest in personal liberty diminishes. *Lassiter,* 452 US 26 . . . . However, petitioner's liberty interest cannot truly be viewed as conditional. If petitioner is truly indigent, his liberty interest is no more conditional than if he were serving a criminal sentence; he does not have the keys to the prison door if he cannot afford the price. The fact that he should not have been jailed if he is truly indigent only highlights the need for counsel, for the assistance of a lawyer would have greatly aided him in establishing his indigency and ensuring that he was not improperly incarcerated. The argument that the petitioner has the keys to the jailhouse door does not apply to diminish petitioner's liberty interest. [768 F2d 1184.]

Furthermore, the risk of error in nonsupport proceedings, leading to the deprivation of physical liberty, has increased significantly since our decision in *Sword* due to changes in the Michigan statutes governing enforcement of child support obligations.

In *Sword,* we focused on the relatively informal,

---

[18] *Baldwin v New York,* 399 US 66, 73; 90 S Ct 1886; 26 L Ed 2d 437 (1970).

uncomplicated nature of the typical nonsupport civil proceeding:

> [T]he judge in most cases questions the parties in a relatively informal hearing. The Friend of the Court is usually not an attorney nor represented by an attorney. The door is always open to counsel of named plaintiff and/or defendant. The facts establishing the arrearage are bookkeeping matters and rarely are subject to substantial dispute. Inquiry concerning defendant's ability to pay, reasons for the arrearage and mitigating circumstances normally are not complicated. [399 Mich 382.]

However, amendments adopted by the Legislature in 1982 included a statutory presumption that every defendant in such a proceeding has the ability to pay four weeks of child support:

> The court may find a payer in contempt if the court finds that the payer is in arrears and if the court is satisfied that the payer has the capacity to pay out of currently available resources . . . . *In the absence of proofs to the contrary introduced by the payer, the court shall presume that the payer has currently available resources equal to 4 weeks of payments under the support order.* [MCL 552.633; MSA 25.164(33). Emphasis added.][19]

---

[19] In addition, the 1982 amendments made it easier for the court to hold an individual in contempt for not exercising diligence in paying child support:

> (1) The court may find a payer in contempt if the court finds that the payer is in arrears and if the court is satisfied that by the exercise of diligence the payer could have the capacity to pay all *or some portion* of the amount due under the support order and has failed or refused to do so.
>
> (2) Upon finding a payer in contempt of court under this section, the court may immediately enter an order committing the payer to the county jail with the privilege of leaving the jail, during such hours as the court determines and under such supervision as the court considers necessary, for the purpose of

Thus, the indigent faces complexities not present when we decided *Sword.* The indigent may be unaware of the statutory presumption, and it is not likely that he will be knowledgeable concerning the variety and sufficiency of evidence required to surmount the presumption. Absent presentation of sufficient evidence to overcome the statutory presumption, as in this case, the court may consider it unnecessary to make an independent determination of the defendant's present ability to comply with the order to pay.

Moreover, the 1982 amendments include a proviso that incarceration shall be ordered "only if other remedies appear unlikely to correct the payer's failure or refusal to pay support." MCL 552.637(1); MSA 25.164(37)(1). Thus, whether the defendant goes to jail may depend upon his ability to effectively persuade the court that an alternate remedy exists.[20]

At least when he is faced with the loss of physical liberty, an indigent needs an attorney to advise him about the meaning and requirements of applicable laws and to raise proofs and defenses in his behalf.[21] In addition, since the state's representative at such a hearing is well versed in the laws

---

allowing the payer to go to and return from his or her place of employment or, if the person wishes to seek employment, to seek employment. [MCL 552.635; MSA 25.164(35). Emphasis added.]

[20] An indigent might have other defenses, e.g., a challenge to the initial support order or to an income withholding order. *Lapeer Dep't of Social Services v Harris,* 182 Mich App 686; 453 NW2d 272 (1990).

[21] The Court in *McKinstry v Genesee Co Circuit Judges, supra* at 807, found that a defendant in child nonsupport proceedings is less likely to be incarcerated if he has an attorney:

What was the effect here of the denial of an attorney? The first noticeable effect is that this plaintiff was jailed without an attorney, and he was released when he obtained one. More importantly, however, the testimony at the hearing in this

relating to child support, fundamental fairness requires that the indigent who faces incarceration should also have qualified representation. See *Bowerman v McDonald,* 431 Mich 1, 12; 427 NW2d 477 (1988).

Against the strong, fundamental interest of the indigent in his physical liberty, and the risk of erroneous deprivation of his liberty, we must balance the government's interests. Where contempt proceedings for nonpayment of child support are concerned, the state has two principal interests at stake. First, the state seeks to assure that each child receives proper financial support.[22] When an obligated parent with the ability to do so fails to support a dependent child, the cost of support falls upon the state. Second, the state seeks to avoid administrative expenses, including fees for appointed attorneys, to the extent possible consistent with constitutional and statutory requirements.

In assessing the government's interests, it is noteworthy that since *Sword* changes in Michigan's child support laws have significantly enhanced the state's ability to enforce support orders

court revealed that those represented by counsel were treated far differently than those unrepresented. . . . Applying a standard statistical analysis to data generated from a specific study of this very court over a time period, it was determined that these differences could not be accounted for as merely random results, but were explainable only by the presence and participation of attorneys. The value of an attorney is demonstrated in plaintiff McKinstry's actual case. There, the state judge sentenced him to 60 days confinement when under the applicable law, he could have been sentenced to no more than 45 days. There is no question but that the presence of an attorney would have revealed the error to the judge.

Accord *Walker v McLain, Ridgeway v Baker,* and *Mastin v Fellerhoff, supra.*

[22] As one commentator has written, for each nonpayer of ordered child support, "[t]here is . . . a victim—a child, visible and often hurting." Chambers, *Making Fathers Pay: The Enforcement of Child Support* (Chicago: University of Chicago Press, 1979), p 245.

by means other than incarceration. The alternatives were few when *Sword* was decided. However, today a variety of effective means are available to compel compliance—if the defendant has the ability to pay—e.g., income withholding,[23] federal tax intercept,[24] state tax intercept,[25] establishing a lien against an individual's real or personal property[26] or requiring a hearing in front of a referee.[27] Indeed, when methods other than incarceration

[23] Although there was limited provision in 1976 for income withholding, MCL 552.203; MSA 25.163, the present statute is broader and more effective. It requires that *every* support order provide for income withholding. If the obligated parent falls behind in making payments, income is withheld and assigned automatically to the Friend of the Court to be disbursed to the proper recipient. MCL 552.607; MSA 25.164(7), MCL 552.603; MSA 25.164(3). The term "income" includes not only wages but "[a]ny payment . . . from a profit-sharing plan, pension plan, insurance contract, annuity, social security, unemployment compensation, supplemental unemployment benefits, and worker's compensation." See MCL 552.602; MSA 25.164(2).

[24] When certain requirements are met, the Internal Revenue Service will withhold payment of any income tax refund to a taxpayer who is delinquent in complying with a child support order. The refund is issued instead to the Friend of the Court for disbursement. MCL 552.624; MSA 25.164(24). See also 45 CFR 303.72.

[25] The state tax intercept program operates in a manner similar to the federal program. Any state tax refund to which such a taxpayer might otherwise be entitled is paid instead to the Friend of the Court. MCL 552.624; MSA 25.164(24).

[26] A lien may be imposed against any real or personal property owned by the defendant. Where feasible, a bond may be required from the defendant to ensure future payment. MCL 552.625; MSA 25.164(25).

[27] The authority to order a hearing before a referee, authorized by MCL 552.507; MSA 25.176(7), can not only save the time of the circuit court, but it often prompts payments:

> (2) A referee may do all of the following:
> (a) Hear all motions in a domestic relations matter, except motions pertaining to an increase or decrease in spouse support, referred to the referee by the court.
> (b) Administer oaths, compel the attendance of witnesses and the production of documents, and examine witnesses and parties.
> (c) Make a written, signed report to the court containing a summary of testimony given, a statement of findings, and a recommended order; or make a statement of findings on the record and submit a recommended order.

are used, there is reason to believe that regular child support payments are more likely to continue.[28]

Furthermore, we have not been convinced that the financial burden which the government must bear by providing counsel in cases where an indigent is to be incarcerated outweighs the fundamental physical liberty interest of the indigent defendant and the risk of erroneous deprivation of his liberty. In response to our invitation, excellent briefs amici curiae were provided in this appeal by representatives of affected governmental units. However, they were unable to demonstrate that the administrative costs involved, when placed on the *Eldridge* scale, would be so burdensome as to outweigh the other interests at stake.[29]

In its amicus curiae brief, the Association for Michigan Counties argues that the cost of providing counsel in *all* child support hearings would be significant. We do not disagree. However, our ruling today does not require the appointment of

(d) Hold hearings as provided in the support and visitation enforcement act. The referee shall make a record of each hearing held.

(e) Accept a voluntary acknowledgment of support liability, and review and make a recommendation to the court concerning a stipulated agreement to pay support.

(f) Recommend a default order establishing, modifying, or enforcing a support obligation in a domestic relations matter.

According to the State Court Administrator's Office, approximately 33,807 child nonsupport cases were disposed of in 1988 by using referee hearings.

[28] Chambers notes in his book, *Making Fathers Pay: The Enforcement of Child Support*, n 22 *supra* at 232-236, that when sanctions other than incarceration were used, regular child support payments continued in sixty-six percent of the cases whereas only thirty percent of the jailed group began making regular payments after release from jail.

[29] The brief amicus curiae filed by the Attorney General on behalf of the State of Michigan takes the position that counsel should be appointed for indigents facing incarceration for child nonsupport regardless of the cost.

counsel in all such proceedings. We hold only that an indigent defendant may not be incarcerated if he has been denied counsel in a contempt proceeding for nonsupport.

In light of the constitutional limitation that we are required to recognize today, it is anticipated that methods other than incarceration will be scrupulously employed to the extent possible. We expect strict compliance with MCL 552.637; MSA 25.164(37), which directs that incarceration shall not be ordered if any other remedy can be effective.

Considering also that the appointment of attorneys in some cases will save the government jail housing costs, the record and briefs made available in this case leave one to speculate whether a cost increase or a cost saving will be the ultimate result.[30] In any event, when the net weight of the *Eldridge* factors is balanced against the *Lassiter* presumption, it is clear that due process requires the result we reach today.

V

Accordingly, we hold that the Due Process Clause of the Fourteenth Amendment precludes incarceration of an indigent defendant in a contempt proceeding for nonpayment of child support if the indigent has been denied the assistance of

---

[30] We are not aware of any comprehensive study which considers and documents the costs involved in providing appointed counsel to indigents in child nonsupport contempt hearings. In *McKinstry, supra,* the Court received expert testimony and state reports on this subject. In its report to the *McKinstry* Court, the State Court Administrator's Office stated that "[w]hile dire predictions have been made by some judges concerning both cost and a reduction in the efficiency of our child support enforcement system, no such evidence has yet surfaced." Meanwhile, statistics recently released by the Federal Office of Child Support Enforcement indicate that for the fiscal year ending September 30, 1988, Michigan led the nation in total collections.

counsel.[31] We overrule *Sword v Sword* only to the extent that it can be read to be inconsistent with this holding.

In any contempt proceeding for nonsupport, the court should assess the likelihood that the defendant may be incarcerated, and particularly in light of MCL 552.637; MSA 25.164(37), which requires the use of other remedies to the extent possible.

We endorse this statement by Justice LEVIN in *Sword:*

> Whenever it is proposed to jail a person for nonsupport a stenographic record is required and there should be careful inquiry focusing on his present ability to pay. . . . Before the defendant can be incarcerated there should be findings supported by substantial evidence that he has the ability to perform the condition of the proposed order of confinement. [399 Mich 394.]

If the defendant claims indigency and the court wishes to reserve the discretionary power to incarcerate the defendant, the careful inquiry referred to by Justice LEVIN must also focus on whether the defendant is indigent under the guidelines provided in Administrative Order No. 1972-4, 387 Mich xxx.[32] If the court determines that the defendant is indigent, and the court wishes to reserve the discretionary power to incarcerate the defendant, the court shall appoint an attorney to represent the defendant unless the right to an attorney is waived.

---

[31] Because our holding is based upon the Due Process Clause of the Fourteenth Amendment of the United States Constitution, we need not consider whether such a right is also protected by the Michigan Constitution.

[32] The court may *not* rely on the presumption in MCL 552.633; MSA 25.164(33) that a defendant has the ability to pay four weeks of child support in determining whether the defendant is indigent.

VI

The judgment of the Court of Appeals is reversed; we vacate the order of the circuit court dated January 12, 1987, which found defendant in contempt; and we remand this case to the circuit court for such further proceedings as may be appropriate, consistent with this opinion.

RILEY, C.J., and LEVIN, BRICKLEY, CAVANAGH, BOYLE, and ARCHER, JJ., concurred with GRIFFIN, J.